(No. 35411.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MONROE ROBINSON, Plaintiff in Error.

*Opinion filed Oct. 31, 1960.—Rehearing denied Jan. 18, 1961.*

James F. Gillespie, of Chicago, for plaintiff in error.

William L. Guild, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Francis X. Riley, and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Defendant, Monroe Robinson, who was jointly indicted and tried with one William Kelley, was convicted of the crime of armed robbery after a bench trial in the criminal court of Cook County and was sentenced to the penitentiary for a term of three to nine years. He prosecutes this writ of error contending that: (1) he was not proved guilty beyond all reasonable doubt; (2) his court-appointed counsel was incompetent; (3) the court erred in not excluding an opinion of guilt expressed by a witness; (4) the court made improper extra-judicial investigation of the case; (5) the court considered improper matters in overruling defendant's motion for a new trial; and (6) an assistant State's attorney made inflammatory statements prior to the imposition of sentence.

The record indicates that on the night of August 28, 1958, about 11:30 P.M., James Lanum, a truck driver, was attacked and robbed as he parked his truck in a hotel parking lot. Describing the occurrence, he related that two men approached him from the rear, hooked a cane around his neck and threw him to the ground, then took his watch and wallet, the latter containing two $10 bills and a check of $82.57 drawn by the Interstate Motor Freight Company. The parking lot was dark and the witness at all times admitted he had not seen the faces of the men involved. Following the robbery, the assailants ran eastward down an

alley while Lanum ran into the hotel lobby to call the police. Finding the telephone busy, he ran back to the alley after two or three minutes and found defendant and Kelley being questioned by police. He reported the robbery, but could not say if defendant and Kelley were the men who attacked him, and thereafter accompanied the police and their prisoners to the precinct station. On cross-examination, he denied having been in the company of a girl at the parking lot, and could not recall that any stops were made by the police car on the way to the station.

Karl Manuel, one of the arresting officers, testified he and his partner, John Long, were cruising in a police car around 11:30 on the night in question and observed defendant and Kelley, the latter with a cane in his hand, running down an alley away from the direction of the parking lot. The pair were ordered to halt and, as the officers were questioning them, Lanum ran up and reported the robbery. When the officers ordered the men to empty their pockets, Kelley produced a watch which Lanum identified as the one taken from him a few minutes earlier. A wallet containing two $10 bills and the check previously described was found on the ground near the scene of the arrest and Lanum likewise identified it as belonging to him. When cross-examined, officer Manuel admitted that a stop had been made at a street intersection while the prisoners were being taken to the station, and conceded that Kelley had called to an acquaintance and requested money. He denied, however, that either he or his fellow officer had made any offer to drop the charges for a cash consideration, or that the stop at the intersection was made to permit money to be acquired for such purpose.

The other arresting officer, John Long, corroborated his partner's account of the events leading to the arrest, and further testified that, when the two were halted, he noticed defendant drop an object behind some refuse cans which ultimately turned out to be Lanum's wallet. He too related

that a stop had been made en route to the station and agreed that the prisoners had called to a pedestrian but stated the stop had been made in response to another call and that he did not hear the conversation with the pedestrian or know its purpose.

Testifying in his own behalf, defendant stated that at about the time the robbery occurred, he, Kelley and some other men were drinking in an alley near the hotel parking lot when he noticed a white man, whom he identified as Lanum, enter the parking lot accompanied by a girl. According to his version, three men immediately followed the couple into the lot and had an argument over the girl, after which the complaining witness left the lot and walked down the alley past defendant. Shortly after this, the whiskey being finished, defendant and Kelley started down the alley to catch a bus but were stopped by the police and were being questioned when Lanum returned and reported he had been robbed by three men. Defendant testified the complaining witness was unable to identify him or his companion, and his version of the finding of the cane, wallet and watch was that they were picked up forty feet down the alley at a spot where he and Kelley had not been. The balance of his testimony was to the effect that officer Manuel had proposed that the charges would be dropped if defendant and Kelley could get some money, that the squad car was driven to the intersection of 26th Street and State Street when Kelley told the officer that some money might be raised there, and that Kelley had unsuccessfully tried to borrow money from a man named James Smith.

William Kelley, the codefendant, corroborated defendant's testimony on all essential points and added his own denial that he and defendant had committed the robbery. James Smith, also a witness for the defense, testified he was standing at the corner of 26th and State streets on the night in question, that he was called to a police car by Kelley and asked for $25 so Kelley could "get cut loose," and that he

offered to get the money at a place on 23rd Street but officer Manuel refused to drive him there. In rebuttal, Manuel denied that he had asked the prisoners for money and explained that Kelley's conversation with Smith had occurred while the police car was stopped for a traffic light.

We believe there was sufficient evidence, if believed by the trial court, to warrant a finding of guilt. Defendant and his companion were stopped while running away from a place where Lanum, the complaining witness, had been robbed but a few minutes earlier. Although Lanum could not identify the men as the robbers, the testimony of the police officers establishes that Kelley had a cane and Lanum's watch in his possession, and that defendant had been seen to drop an object behind the refuse cans where Lanum's stolen wallet was found. Defendant does not claim that the circumstances are insufficient to support a finding of guilt, but asserts that the testimony of the arresting officers is unworthy of belief in view of the defense testimony relative to the attempt of the officers to extract money from their prisoners. Where a jury is waived, however, the credibility of witnesses and the weight to be given their testimony are matters to be determined by the trial court. On review, we will not disturb the judgment of the trial court in such respects, unless it rests on doubtful, improbable, unsatisfactory or clearly insufficient evidence. (*People v. Pride*, 16 Ill.2d 82; *People v. West*, 15 Ill.2d 171.) The improbabilities in the present record, we believe, lie in the testimony of the defense witnesses that officer Manuel, in the presence of the complaining witness, sought to extract a bribe and to permit the prisoners to raise the money therefor in the crude manner described. From a careful consideration of all the evidence we are of the opinion that the court was justified in believing the officers, or in finding defendant guilty.

In support of his claim that the assistant public defender appointed to represent him was incompetent, defendant

charges that counsel failed to cross-examine the complaining witness relative to the discovery of the cane and stolen articles, that he aggravated the court by moving to suppress from evidence articles defendant denied ever having in his possession, that he prejudiced defendant's cause by eliciting from officer Long an opinion that defendant was guilty, that he failed to request the production of certain police reports referred to by Long, that he failed to request a transcript of Manuel's testimony at a preliminary hearing, that he improperly waived final argument, and that he neglected to file a written motion for a new trial.

To warrant a reversal because of incompetency of counsel, the record must clearly establish not only that counsel performed his trial duties in an incompetent manner, but also that defendant was substantially prejudiced thereby. (*People* v. *Morris,* 3 Ill.2d 437.) We do not find that these requirements have been met in this case. It is true defendant's attorney might have interrogated Lanum at greater length as to whether the stolen articles were found in the defendant's possession but the advisability of such action depended entirely upon the nature of the response. Without knowing whether the witness would have corroborated the police or defendant's account, it is impossible for us to say that counsel acted unwisely or to his client's prejudice in this respect. It is interesting to note that the opposite complaint is made concerning counsel's questioning of officer Long. During cross-examination Long made an equivocal statement when asked if he thought defendant and Kelley were the men who robbed Lanum and with the evident intention of exploiting what appeared to be a favorable expression by a prosecution witness, defendant's attorney directly asked if the officer believed the defendant guilty and received an affirmative reply. While hindsight now indicates the question would better have been left unasked, it does not denote a lack of competency of the defense. *People* v. *Barnes,* 270 Ill. 574.

Although the motion to suppress was unnecessary under the theory advanced by the defendant, there is nothing in the record to indicate the pursuit of such a course in any manner aggravated the trial court or adversely affected its decision. Neither is lack of competency shown by the failure to formally request the production of police reports or the transcript of a prior hearing concerning this case. For all that appears in the record, defense counsel may have had ample opportunity to examine such documents and may have come to the conclusion they contained nothing which could be used in impeaching the officers' testimony. Certainly, without knowing what these records contained, we cannot say the failure to produce them was prejudicial to the defendant. Also, it appears that defense counsel did not waive oral argument but in fact made a statement equally as long as that of the prosecutor. Finally, although defense counsel did not file a written motion for a new trial, he did raise the matter by oral motion which, not being objected to by the People, preserved any error for later review. (*People* v. *Flynn,* 8 Ill.2d 116.) Furthermore, despite defendant's present claim of incompetency, he at no time during trial expressed dissatisfaction with his attorney nor requested that other counsel be appointed for him. Cf. *People* v. *Merrieweather,* 11 Ill.2d 619.

Defendant next contends the court erred in failing to exclude, of its own motion, the opinion of guilt elicited by defense counsel during the cross-examination of officer Long. However, even if it be conceded the officer's testimony was improper, it does not follow that prejudicial error resulted. It is basic that, in the absence of a jury, the trial court alone has the function of determining guilt, and we have held on numerous occasions that the court is presumed to have considered only competent and relevant evidence in reaching its decision. (*People* v. *Grabowski,* 12 Ill.2d 462; *People* v. *Flanagan,* 405 Ill. 155.) We find nothing to rebut this presumption in the present case, nor,

in view of sufficient other evidence of guilt, any indication that the court's determination was in any manner influenced by officer Long's opinion.

Before the trial began, it appears that a stipulation was entered into between the prosecution and defense that defendant would take a lie-detector test, and that the result would be admitted in evidence without objection. Pursuant to such stipulation an order was issued by the court for such a test to be made but, when defendant appeared, employees in the State's Attorney's office refused to give it. Defendant's counsel communicated these facts to the court at the opening of the trial, but made no objection and permitted the trial to proceed. Counsel again raised the issue in the course of his closing argument and, after an extended discussion, the court indicated his belief that defendant should be permitted to take the test in accordance with the stipulation. Defendant, however, advised the court he did not want to take the test after having stood trial and the court thereupon entered a finding of guilty. Upon the same occasion the court denied motions for new trial and arrest of judgment. Before sentence was pronounced, however, the subject of the lie-detector test came up again, and when defendant manifested a desire to take such a test, the cause was continued for that purpose. Upon the resumption of the trial a few days later, defense counsel reported that the State's Attorney's office still refused to give the test. The court, however, stated he had discussed the matter with Frank Ferlic, the first assistant to the State's Attorney, and had been advised that the test had been refused through a misunderstanding, and that it would be given. After this information had been conveyed to counsel, the court issued a new order for the test and continued the cause for two days. When the latter date arrived, the test had been given but a report thereon had not been received either by the court or counsel. Defense counsel, however, refused a continuance until the report could be received, stating, with

the agreement of his client, that only the evidence adduced at the trial should be considered. The court acceded to this wish and, after hearing evidence in aggravation and mitigation, sentenced defendant to the penitentiary.

On the basis of the prolonged and complicated discussions over the lie-detector test, defendant now claims that the court erroneously conducted an extra-judicial investigation when he talked to Ferlic about the test and that, in finding defendant guilty, the court gave greater weight to defendant's refusal or willingness to take the test than it did to the evidence brought forth in the trial. Both contentions are completely specious. As to the latter, the record shows not only that the court relied only upon the evidence at the trial, but that most of the controversy and vascillation on the part of defendant over the test occurred after he had already been found guilty. As to the first claim, the court's conversation with Ferlic did not occur until after a finding of guilty had been entered and a motion for new trial was denied, and, as the record clearly shows, was for the sole purpose of accommodating defendant in receiving the lie-detector test he desired. Under these circumstances it can hardly be said that the court was seeking information as to the guilt or innocence of the accused.

Equally without merit is defendant's claim that the court denied his motion for new trial on the basis of nonexistent facts and inferences not warranted by the evidence. While the court did mistakenly state the complaining witness had testified the cane, watch and wallet had been recovered by the police before the witness arrived, the record reveals not only that the remark of the court occurred during a colloquy between the court and defendant long after the oral motion for new trial had been denied, but also that the court's erroneous assumption could not in any manner have influenced the finding of guilt.

During the hearing of evidence in aggravation and mitigation the prosecutor commented adversely as to defend-

ant's demeanor in court. When defense counsel denied the accusation, the assistant State's Attorney addressed him and said: "You know better than any one else they are guilty." This remark, though ill-advised, could hardly be said to have been prejudicial in view of the fact defendant received a sentence of three to nine years instead of the five to twenty years the prosecution had demanded. Moreover, it is presumed that where a jury is waived the judge will disregard all improper remarks and arguments of counsel. *People* v. *Grodkiewicz,* 16 Ill.2d 192.

Considering the record in its entirety it is our opinion that defendant received a fair trial without prejudicial error. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*