People of the State of Illinois, Plaintiff-Appellee, v. Orville L. Masterson, Defendant-Appellant.

Gen. No. 64–71.

Third District.

January 25, 1967.

Louis Olivero, of McNeilly & Olivero, of Peru, for appellant.

Robert E. Richardson, State's Attorney, of Ottawa, for appellee.

STOUDER, P. J.

Two indictments were returned by the grand jury of LaSalle County against Defendant-Appellant, Orville Lee Masterson. The first indictment charged in two counts the attempted murder and assault of Diane Miller. The second indictment, in six counts, charged aggravated kidnapping, rape and aggravated assault against Elaine Davis and like offenses against Linda Peterson. Prior to trial, the People moved to dismiss the aggravated assault count in the first indictment as to Diane Miller. Both indictments were then consolidated for trial. The jury found Defendant guilty on each of the seven counts and thereafter judgments of conviction were entered by the Circuit Court of LaSalle County. Defendant was sentenced to the penitentiary for indeterminate periods of time, the maximum sentences being from 40 to 60 years for the convictions of aggravated kidnapping and rape, the sentences to be served concurrently.

Since most of the alleged errors depend on the sufficiency of the evidence we believe that a summary of the evidence is required.

Diane Miller, age 14, the object of the attempted murder charge, testified that on November 11, 1963, she was at home babysitting with her boy friend, William Smith. Linwood Sluder, age 21, with whom she was acquainted, came to the door on three occasions and asked her to go out with him. On the first two occasions he was alone, on the third occasion at about 8:15 p. m., another person unknown to the witness and later identified as the Defendant, appeared from around the corner of the door with a gun in his hand and ordered the witness to open the door or he would shoot. The witness slammed the solid wooden door, and jumped to one side. Moments later a gun discharged, a bullet came through the door

about 4 feet from the floor, and embedded itself in a wall opposite the door. The witness was undecided as to what to do but shortly thereafter her mother called and immediately came home, the sheriff's office being thereafter notified of the incident.

Defendant Masterson, age 35, in testifying in his own behalf, described his acquaintance with Linwood Sluder. On the morning of November 11, 1963, he had picked up Linwood Sluder. In the afternoon Defendant and Sluder met Elaine Davis and Nellie Thomas and offered to meet the girls about two blocks away. Defendant and Sluder secured some beer and met the girls, offering them beer which Elaine Davis accepted and Nellie Thomas refused. According to Defendant, Sluder made a date to meet Elaine Davis later that night. Defendant and Sluder then drove around finally going to Sluder's home located a short distance from Diane Miller's house. Defendant went with Sluder on the three occasions that Sluder called on Diane Miller, remaining in the car on the first two occasions. According to Defendant, Sluder told him that Diane Miller would go out with them later as soon as her mother returned. Between the visits Defendant and Sluder drove around and returned to Sluder's home. Prior to the third visit to the Miller house Sluder put a 45-caliber pistol and a 22 rifle in the car. Defendant accompanied Sluder to the door on the third visit, Sluder at the time having a pistol in his belt. As they approached the door Sluder gave him the pistol saying that if Diane Miller saw it she might be scared. During the ensuing conversation Defendant was standing to the left of the door. When Sluder made a threatening gesture towards Diane Miller she slammed the door and Sluder asked for the pistol which Defendant gave to him. Thinking that Sluder intended to shoot the boy friend, Defendant struggled for the pistol which discharged, the bullet passing through the door. Both Sluder and Defendant left the Miller house.

121

Linwood Sluder, serving a term in the penitentiary as a result of revocation of probation because of his participation in this incident was called as a witness by Defendant. He confirmed the three visits to Diane Miller's house indicating that when they had left his sister's house they had two knives, a 22 rifle and the 45-caliber pistol. He stated that when Diane Miller refused to come out he had told the Defendant Masterson to shoot. He also indicated that there might have been a struggle but that he was too excited to recall just what happened.

Linda Peterson testified that late in the evening on November 11, 1963, she was walking home after having visited a girl friend. A car pulled up driven by a person unknown to her, later identified as Defendant. Linwood Sluder, with whom she was acquainted was sitting in the passenger seat. He asked the witness if she wanted a ride which she refused. The car turned around and the procedure was repeated. The car then stopped a third time and on this occasion the Defendant got out of the car, came over to her, twisted her arm behind her back, put a hand over her mouth and forced her to get in the front seat of the car. She testified that when she refused to go with them she was threatened and told that they had previously shot Diane Miller. She saw a pistol in the car and two knives were passed back and fourth between Defendant and Sluder, the knives being admitted as exhibits and identified by the witness. Linda was told that some person had agreed to pay $1,500 to have the witness and Elaine Davis picked up. Defendant then drove the car to the home of Elaine Davis in Wedron, Illinois.

Concerning the incident with Linda Peterson, Defendant testified that a few minutes after leaving Diane Miller, Defendant and Sluder overtook a girl unknown to him at the time but later identified as Linda Peterson. Defendant was driving the car which stopped on three occasions in an effort to get the Peterson girl into the

122

car. After her refusal on the first two occasions Sluder said that the reason she didn't get in was because Sluder had been drinking. Sluder told Defendant that if he would get out and explain to her that he had not been drinking she would get in. This Defendant did on the third stop and according to his testimony Linda Peterson got into the car voluntarily. Concerning this incident Sluder corroborated Linda Peterson's testimony that she was forced into the car in the manner she described.

Elaine Davis testified that late in the evening of November 11, 1963, Linwood Sluder, with whom she had been acquainted approximately two years, came to the door of her home and indicated that "Tex," Defendant Masterson, wanted to see her in the car. She went with him to the car and as they approached the car Sluder pulled a gun, forced her into the front seat of the car with a girl she did not know, later identified as Linda Peterson, and Defendant Masterson. The witness testified that she had met and talked briefly with Defendant and Sluder in the afternoon in Wedron but denied that she had made a date with Sluder or that she had spent any time during the afternoon drinking with either Defendant or Sluder.

Defendant Masterson testified that Elaine Davis had come out to the car with Sluder, she came to his side of the car and told him she had to go talk to a priest first. According to Masterson she changed her mind and got into the car voluntarily. Witness Sluder testified that Elaine Davis started to get into the car and backed away at which time he (Sluder) forced her into the car at the point of a gun.

Elaine Davis and Linda Peterson testified that they, Sluder and Defendant Masterson, drove around country roads in the LaSalle County area all night. That Sluder and Defendant made numerous threats to kill them if they did not cooperate and that they were compelled to submit and did submit to acts of sexual intercourse, that

123

their submission was the result of threats and intimidation including repeated references to the fact that Diane Miller had been killed earlier in the evening. The girls testified that in addition to the pistol, which was always in evidence, there were two knives and two rifles in the car. That sometime during the night the car stopped at a filling station for gasoline but the girls were warned not to make any effort to cry out. At about 7 o'clock in the morning they went to Defendant Masterson's house where Defendant and Sluder cleaned up and shaved and where Defendant again had intercourse with Linda Peterson again accompanied by threats and intimidation. They then drove to a factory where they changed cars transferring the guns to another car and then drove to the residence of Marybelle Manning in Wedron.

Defendant admitted acts of intercourse with both Elaine Davis and Linda Peterson during the night but claimed that the girls were not threatened or intimidated and that their presence in the car and the actual intercourse were voluntary. Witness Sluder corroborated the testimony of the girls admitting that threats were made, that there were knives and guns in the car and a pistol in his possession most of the night and that Linda Peterson was crying most of the time.

Marybelle Manning testified that Linda Peterson, Elaine Davis, Sluder and Defendant came to her apartment between 9 and 10 o'clock on November 12, 1963, and asked to come in. The witness was acquainted with all four persons. She testified that the girls were disheveled and that Linda Peterson was crying. She stated that Linda's sister had been around about 8 that morning looking for Linda saying Linda had been out all night. She also testified that Defendant Masterson talked to her in the kitchen and asked her to keep the girls in the apartment for 30 minutes, not to let them go any place or talk to anyone. After Sluder and Masterson had been gone five minutes, Marybelle called the sheriff's office

and they immediately dispatched a deputy for Linda Peterson and Elaine Davis. Thereafter the witness called the parents of each girl. Marybelle stated that no mention was made in her presence of any assault, kidnapping or rape.

After leaving the Manning apartment, Sluder and Defendant headed for Kentucky, Defendant claiming that Sluder forced him to go. Defendant and Sluder were apprehended in Taylor County Kentucky on November 14, 1963, offering no resistance. A 45-caliber pistol containing 5 undischarged shells was found in the glove compartment in the car at the time of their arrest.

Witness Sluder testified that he had the pistol in his possession when they left the girls at the Manning apartment and that Defendant had told him that he had asked Marybelle Manning to hold the girls to give the men time to escape.

A physician testified that he had examined Linda Peterson and Elaine Davis on November 12, 1963, at the request of the Sheriff's office. His examination revealed no bruises, cuts or lacerations. His pelvic examination of Elaine Davis revealed no seminal fluid or evidence of forced entry. His pelvic examination of Linda Peterson revealed some tissue tearing but no seminal fluid.

The records of three prior convictions of Defendant for felonies were introduced.

 Defendant in seeking a reversal of his convictions first argues that the court erred in the admission of exhibits. The exhibits complained of are a pistol, a bullet, two knives, a belt and a pair of panties. With respect to the pistol and bullet we find no support for Defendant's contention that the exhibits were not properly identified. The record indicates that the 45-caliber pistol was identified by serial number as the same pistol which was discovered in the car at the time Defendant was apprehended in Kentucky, the Sheriff of Taylor County Kentucky testifying in this regard. Also Diane

Miller testified that the pistol was similar to the one she had seen in Defendant's hand immediately prior to the shooting. Sluder testified that the pistol belonged to him and that it was the one used during the night in question. With respect to the bullet, Margaret Thompson, mother of Diane Miller, testified that her son-in-law removed the bullet from the wall in her presence, that he gave the bullet to her, that she wrapped it in tissue paper and a day or two later gave it to a deputy sheriff. She also identified the bullet as the one extracted from the wall. Such exhibit did have some probative value in establishing that in fact a shot had been fired and in determining its direction when considered with other testimony and photographs.

█ Defendant argues that the two knives, belt and panties introduced as exhibits by the People were improperly admitted since they were seized in an illegal search of Defendant's car. Defendant argues that under the authority of Mapp v. Ohio, 367 US 643, 84 ALR2d 933, and James v. Louisiana, 15 L Ed2d 30, the search and seizure were illegal since not incidental to a lawful arrest or supported by a search warrant. From a consideration of the facts in the record it is evident that the evidence was not the result of a proscribed search and seizure. Not only does the evidence tend to show that the car which was searched belonged to Defendant's wife and that she freely consented to a search of the car, but that Defendant left the car for her in the factory parking lot where she worked. Thus she had the use and occupancy of the car at the time she consented to its search and no search warrant was required. People v. Palmer, 31 Ill2d 58, 198 NE2d 839.

█ This brings us to Defendant's contention that the evidence is insufficient to sustain his conviction for attempted murder, there being lack of evidence of intent required by such offense. It is asserted by Defendant that there is no evidence that he discharged the pistol, had

any malice toward Diane Miller or specifically intended to murder her. Such assertion requires the complete acceptance of Defendant's version of the incident as well as complete disregard of unfavorable inferences which could have been drawn from Defendant's own testimony and all other conflicting evidence. It is true that the evidence does not show any preexisting malice, anger or hatred of Defendant toward Diane Miller. However the intent with which an act is done may be inferred from the act itself and the surrounding circumstances, it being presumed that every person intends the natural and probable consequences of his actions. People v. Coolidge, 26 Ill2d 533, 187 NE2d 694. Defendant's deliberate possession of a loaded pistol, his stepping from a place of concealment with a pistol in hand, the rebuff by Diane Miller, and Defendant's possession of the pistol immediately prior to the slamming of the door are all actions from which it can be inferred not only that Defendant discharged the pistol but that the nature and probable consequences of such conduct could result in serious harm or death. It can also be inferred from the evidence that Defendant intended to force Diane Miller to go with them which in itself is illegal conduct and the firing of the pistol while trying to commit an illegal act furnishes the necessary intent.

■ With respect to the offense of forcible rape, Defendant, having admitted sexual intercourse with each of the prosecuting witnesses, the primary question before us is whether the evidence warrants the jury's conclusion that such intercourse was forcible and against the will of the complaining witnesses. In People v. Faulisi, 25 Ill2d 457, 185 NE2d 211, the court said "When the charge is forcible rape, the fact that the act of intercourse was performed forcibly and against the will of the complaining witness is a necessary element of the crime which must be proved beyond a reasonable doubt. The degree of force exerted by the Defendant and the amount of

127

resistance on the part of the complaining witness are matters that depend upon the facts of the particular case. Thus we have held that resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female as where the assailant is armed with a deadly weapon, and that proof of physical force is unnecessary if the prosecuting witness was paralyzed by fear or overcome by superior strength of her attacker. (People v. Ardelean, 368 Ill 274, 13 NE2d 976.)"

There are substantial conflicts in the evidence, the prosecuting witnesses portraying the activities of the night as based on threats, intimidation, terror and fear, and that their submission was based on fear of harm or death and the futility of escape. The Defendant denies any threats, violence or intimidation and claims the girls were willing and cooperative. However, in reviewing the record as a whole it is evident that the jury was not required to base its verdict solely on the conflicting evidence of Defendant and prosecuting witnesses. There is substantial evidence in the record, either admitted by Defendant or established by other witnesses, which both corroborates the testimony of the complaining witnesses and is inconsistent with the contentions of the Defendant. Defendant admits that at the start of the activities of the night, guns and knives were placed in the car. After Sluder's rebuff in his second visit to Diane Miller's house, Defendant accompanied Sluder to the door, concealed himself and then stepped out with a loaded pistol in hand. Within a few minutes of Defendant's participation in the near fatal shooting of Diane Miller, Linda Peterson was enticed into the car and shortly thereafter Elaine Davis entered the car. The possession of guns and knives could indicate deliberate preparation for and intention to commit some unlawful act. Once having embarked upon a course of violence as represented by the effort to force Diane Miller to come with them and

■■■■■■

the subsequent shooting, it is not unreasonable to conclude that Defendant and Sluder, feeling or believing that they had nothing to lose, continued their illegal conduct with respect to opportunities nearest at hand. Such opportunity was the enticement of Linda Peterson into the car a few minutes later, and, later Elaine Davis. The girls learned of the shooting incident from the Defendant and Sluder and it is difficult to conceive of any circumstance more likely to contribute to the compulsive effect of the accompanying threats even in the face of the Defendant's denial of such threats. Marybelle Manning testified that at the time the girls were delivered to her apartment Sluder had a pistol and that Defendant requested her to hold the girls for half an hour. It is conceded by Defendant that flight ensued to avoid apprehension and that he was arrested in Kentucky and at that time, Sluder's pistol with one bullet discharged was found in the car.

Defendant argues that there are undisputed facts which support his version of the incident namely the absence of evidence of injury to the girls indicating physical mistreatment or physical resistance, that the girls did not avail themselves of apparent opportunities to escape, that they slept in the car and that they failed to complain of their alleged mistreatment at the earliest opportunity. While such facts might be deemed to be consistent with Defendant's claim, they are not necessarily inconsistent with the testimony in behalf of the prosecution nor do such facts rebut the persuasive effect of the facts admitted by Defendant or established by independent testimony.

■■ ■■ We believe that the evidence as a whole, substantially corroborates the testimony of the complaining witnesses and that such evidence amply supports the jury's verdict finding Defendant guilty of both forcible rape and aggravated assault. In addition, the testimony of Sluder, the accomplice, supports the version of the

incident related by the complaining witnesses and is substantially contrary to the testimony of the Defendant.

 Next Defendant asserts that the evidence is insufficient to sustain his conviction for aggravated kidnapping. Defendant argues that there is no evidence of secret confinement, intent or demand for ransom. We find no merit in these arguments. Section 10–1, chap 38, Ill Rev Stats (1965) provides that a person commits the offense of kidnapping when he knowingly secretly confines a person against his will. A person may be secretly confined within the meaning of the kidnapping statute if confined in a car. People v. Bishop, 1 Ill2d 60, 114 NE2d 566. That a person be held for ransom or that a demand for ransom be made is not an element of the offense of kidnapping. If ransom is demanded the kidnapping is considered aggravated kidnapping. Section 10–2(a)(1), chap 38, Ill Rev Stats (1965). From the foregoing discussion of the evidence it is apparent that the jury could have believed that the girls were deliberately forced into the car and confined therein against their will which conduct would constitute the offense of kidnapping. Section 10–2(a)(3), chap 38, Ill Rev Stats (1965) provides that a person guilty of kidnapping within the terms of Sec 10–1 is guilty of aggravated kidnapping when he knowingly inflicts great bodily harm or commits another felony upon his victim. Clearly a demand for ransom is not an essential element of the offense as described in this section.

We do not believe it necessary to discuss the other assignments of error urged by the Defendant since they are without merit. For the foregoing reasons we find no error in the judgment of the Circuit Court of LaSalle County, therefore said judgment is affirmed.

Judgment affirmed.

ALLOY and CORYN, JJ., concur.