THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TREATY McKNIGHT, Defendant-Appellant.

First District (5th Division)    No. 78-813

Opinion filed May 4, 1979.

138

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Nicholas P. Iavarone, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of aggravated kidnapping, rape, and deviate sexual assault and was sentenced to concurrent terms of six to nine years for each offense. On appeal, he contends that he was not proved guilty beyond a reasonable doubt and that prosecutorial misconduct denied him a fair trial.

It is undisputed that at dusk on an October evening, sexual intercourse occurred between complainant and defendant in the basement apartment of his family's home; however, their accounts of the surrounding circumstances are markedly different.

Complainant, a 13-year-old first-year high-school student, testified that at approximately 7 p.m. on the evening in question she decided to go to a friend's home to borrow a book to complete a homework assignment. Not knowing the exact address, she proceeded in what she believed was the general direction of the friend's home but inexplicably walked a block out of her way. As she was proceeding down a street lined with a large high-school building on one side and homes on the other, she was approached from behind by a man whom she later identified as defendant. He grabbed her hair and, when she screamed, he threatened that she would never see her home again if she did not keep quiet. At no time, however, did he produce a weapon. After he pushed her into the passenger seat of a green car which was idling at the curb, defendant ran around the vehicle to the driver's side and then drove to a nearby alley where he exited the car, went around to the passenger side, and pulled her from the vehicle. Twisting her arm behind her back, he forced her through the back yard and gangway adjoining his parents' home. She did not see anyone on the back porches or

looking out of the windows of nearby homes; but, nonetheless, she hollered for assistance. At this point, defendant again threatened that she would never return home if she did not keep quiet. He then led her to the front door of the house and, seeing no one in close proximity, she did not shout or attempt to escape during the short time they stood on the porch.

Once inside, defendant forcibly removed her coat as she tried to keep it on, and he then took her into the basement apartment via a back stairway located off the kitchen. In the basement, defendant pushed complainant onto a couch where she struggled with him to prevent the removal of her clothing. During the course of this action she heard a movement upstairs but, as she began to shout for assistance, defendant again threatened her and placed his hand over her mouth. Defendant then called out to ascertain whether it was Greg who was upstairs, and a voice replied affirmatively. Defendant continued to hold his hand over her mouth for a few minutes until Greg left the house. Thereafter, he resumed disrobing her, after which he undressed himself, and when she tried to move away he grabbed her by the hair and pulled her toward him. After two attempts at intercourse with complainant were unsuccessful, he forced his penis into her mouth—overcoming her resistance by vigorously pulling her hair. In doing so, he attained an erection and then penetrated her vagina with his penis.

After they dressed, he drove her home where, upon entering, she saw that three of her mother's friends were visiting. Without saying anything, she went to her bedroom and moments later began vomiting in the bathroom. When her mother inquired concerning her condition, she replied that she had been raped. Her mother called the police, and complainant told one of the officers what had occurred. She pointed out defendant's house to the officers, who then took her to the hospital with her mother. There was testimony at trial that a pap smear taken from complainant at the hospital was positive for the presence of spermatozoa, but there was no testimony of vaginal trauma.

Defendant, a 23-year-old hair stylist and barber, testified that a month prior to the incident in question he met complainant at a disco and, believing her to be 18 or 19 years old, he talked to her for two to three hours that night before driving her home. During this conversation, she gave him her telephone number and, on the day before the incident in question, he telephoned her for a date. She suggested meeting between 5 and 6 p.m. the next day at his house.

That day, he had been working on his car at a friend's house and used the latter's car to return home to pick up a hair dryer. Driving back to the friend's home, he saw complainant and called to her. She told him she had been on her way to his house and accepted his invitation to enter the car. They went to his home where, without direction from him, she walked through the main floor of the home and down the stairway to the basement

apartment where he customarily entertained. He remained behind in the kitchen to consume a soft drink before joining her in the basement apartment, where he turned on some music and they engaged in sexual intercourse for 20 to 30 minutes. At no time did she resist his advances, and he had no difficulty achieving penetration. While they were together in the basement apartment, his brother Greg entered the main floor of the house and called to him. At this time he was not subduing complainant in any fashion, and she made no effort to call out to Greg. After they dressed, he drove her home and lingered in front of her house for 10 minutes while investigating a "knocking" sound made by his friend's car. He spent the remainder of the evening with friends and, upon returning home in his own car, was arrested.

At trial, complainant's mother testified that she was at home when her daughter arrived, and shortly thereafter she heard her vomiting in the bathroom. She then followed complainant to the bedroom, where she began crying and said that she had been raped.

A police fingerprint technician testified that a latent print belonging to complainant was found on the passenger door of the car driven by defendant when he arrived home shortly before his arrest, and documentation disclosed him to be the purchaser of license plates of that car (not the car of his friend, which he claimed he was driving when he picked up complainant). Further, an assistant State's Attorney who questioned defendant after his arrest testified that defendant told him he had nothing to do with the incident involving complainant and that he had been elsewhere with friends during the time in question.

Gregory McKnight testified that on the evening in question, after he entered his family's home, he heard defendant call to him from the basement. Greg announced his presence and, while making a sandwich, he heard defendant and a woman conversing in the basement apartment but could not understand what was being said. He heard no sounds of a struggle and left within a few minutes of his arrival.

The two police officers gained entry to the McKnight home when defendant's parents arrived at 10 p.m. The officers and the parents were in agreement that the furnishings on the main floor and in the basement were not in disarray. One of the officers testified that he found a button on the basement floor, and complainant identified the button as having been torn from her blouse when defendant was trying to remove her clothing.

Opinion

■■ Defendant contends first that the evidence was insufficient to prove his guilt of rape beyond a reasonable doubt. We disagree.

In cases of rape, a court of review is especially charged with the duty of carefully examining the evidence and, if such evidence fails to remove

all reasonable doubt and to create an abiding conviction of guilt, it must reverse the judgment. (*People v. Faulisi* (1962), 25 Ill. 2d 457, 185 N.E.2d 211.) If clear and convincing, the complainant's uncorroborated testimony in itself will sustain a conviction for rape (*People v. Brown* (1963), 29 Ill. 2d 375, 194 N.E.2d 326; *People v. Mack* (1962), 25 Ill. 2d 416, 185 N.E.2d 154) but, where such testimony is not clear and convincing, corroboration is necessary to sustain a conviction (*People v. Kepler* (1966), 76 Ill. App. 2d 135, 221 N.E.2d 801.) In order to prove the charge of rape, there must be evidence to show that the act was committed by force and against the will of the complainant (*People v. DeFrates* (1965), 33 Ill. 2d 190, 210 N.E.2d 467), but the degree of force executed by the defendant and the amount of resistance on the part of the complaining witness are matters that depend upon the facts of the particular case (*People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865).

Defendant places heavy reliance upon two cases—*People v. Taylor* and *People v. Anderson* (1974), 20 Ill. App. 3d 840, 314 N.E.2d 651—in which each court isolated the State's evidence and determined that it was insufficient to create an abiding conviction of guilt beyond a reasonable doubt. However, we do not feel that those cases are controlling here as, from our review of the facts and circumstances in the instant case, we believe that guilt was established beyond a reasonable doubt.

Here, this 13-year-old high-school student testified that she was walking down a public street when defendant (whom she had not known previously) grabbed her by the hair and pulled her into his car. She screamed and was threatened that she would never return home again if she was not quiet. She did not see a weapon and, although they were equal in height, she was unable to struggle free of his grasp and observed no one in the vicinity who could give her assistance. After being pushed into the passenger seat, she made no effort to escape as defendant went around the vehicle to the driver's side but, because it does not appear that she was aware of his ultimate intentions at that time, we cannot accept defendant's suggestion that her failure to leave the car at that time amounted to a consent to engage in sexual activity. While she did have the opportunity to escape again when defendant parked in the alley and walked around to her side of the car, we note her testimony that she observed no one in the alley to lend her assistance in the event that she attempted an escape.

Neither do we see basis for a conclusion of consent from the remainder of her testimony. She said that defendant pulled her from the car in the alley and, while twisting her arm behind her back, led her through the yard and gangway adjoining his parents' home. As she neared the neighboring homes, although no one was visible on the porches or in the windows, she nevertheless again began to shout and defendant once more threatened that she would never see her home again if she continued her attempts to

attract attention. On the front porch of defendant's home, as he used a key to open the door, she observed no passersby to assist her. Once inside, she struggled to prevent the removal of her coat but, by forcing one hand underneath and using the other on the outside of her coat, defendant unbuttoned and took it off. She was then led through the main floor and downstairs to the basement apartment, and it appears that defendant's intentions were first made known to her when he attempted to remove her clothing—which she struggled against. As he restrained her, she attempted to secure her clothing by holding on to each item as he tried to take it off. While defendant was attempting to remove her blouse, she heard someone upstairs, but her attempt to attract attention by crying out was stifled when defendant put his hand over her mouth. He kept his hand over her mouth until the third person had left the house, when he resumed removing her blouse. In doing so, he knocked a button from it—which was later found on the basement floor by a police officer. After her clothes were removed, she was pushed onto a nearby bed while defendant removed his clothing, following which she struggled to evade him but he grabbed her by the hair and pulled her towards him. When he attempted oral copulation, she resisted by keeping her mouth tightly closed and moving her head from side to side. By pulling her hair with greater force, he was able to open her mouth and accomplish his purpose. She continued to resist before he succeeded in having intercourse with her.

It appears to us that complainant's testimony was clear and convincing in character, thus dispelling the need for corroborating evidence and, if believed, that it was sufficient to sustain the conviction of rape. This follows because at the onset her life was threatened and at no time was she presented with any opportunity to obtain assistance from a passerby. Her testimony as to her struggles with defendant is sufficient to establish beyond a reasonable doubt that she did not willingly engage in intercourse with him. That this unwillingness was comprehended by defendant is supported by her testimony that each time she struggled he pulled her hair with increasing force until she submitted. Moreover, there is also some corroboration of her testimony from the reasonably prompt complaint she made to her mother that she had been raped and from the fact that a button torn from her blouse was found by the police on the basement floor. We note also that her credibility was to some extent enhanced by certain deficiencies in defendant's account of the incident. (See *People v. Mueller* (1954), 2 Ill. 2d 311, 118 N.E.2d 1.) He testified that he had drive her to his house and later back to her home in his friend's car, but her fingerprint was found on the passenger door of his automobile; that although this was her first visit to his home, she walked without any direction from him through the living room, dining room and kitchen located on the first floor and proceeded directly downstairs to the basement apartment while he

remained upstairs; and that shortly after his arrest, he denied any participation in the incident involving complainant, stating that he had been elsewhere with friends during the time period in question.

Defendant also contends that he was similarly not proved guilty of aggravated kidnapping and deviate sexual assault beyond a reasonable doubt. It is his position that to sustain a conviction for aggravated kidnapping, forcible and secret confinement of the victim must be proved beyond a reasonable doubt (*People v. Masterson* (1967), 79 Ill. App. 2d 117, 223 N.E.2d 252; *People v. Landis* (1966), 66 Ill. App. 2d 458, 214 N.E.2d 343); that to sustain a conviction for deviate sexual assault, the use of force against and lack of consent by the victim must be proved beyond a reasonable doubt (*People v. Anderson*; *People v. Bruno* (1969), 110 Ill. App. 2d 219, 249 N.E.2d 252); and that the absence of force directed against complainant and her willing participation require the reversal of his convictions for aggravated kidnapping and deviate sexual assault. Again, we disagree.

■■ Here, the evidence shows that defendant forced complainant into his car by pulling her by the hair, with a threat that she would never see her home again if she did not go quietly. She was then forced into his family's home as he twisted her arm and again threatened her. When Greg, the only person indicated to have been in close proximity to complainant and defendant, made his presence known, her cry for help was stifled by defendant. Later, when Greg had gone, defendant victimized her by the commission of a forcible felony upon her. Such evidence is sufficient to establish defendant's guilt of aggravated kidnapping beyond a reasonable doubt. *Landis*; *Masterson*.

■■ The evidence relating to the charge of deviate sexual assault shows that complainant held her mouth tightly closed and moved her head from side to side as defendant attempted to achieve oral copulation with her, and that only after he intensified the amount of force exerted in pulling her hair was he able to force open her mouth to complete his purpose. This conduct, in our opinion, leaves no reasonable doubt that she did not willingly participate in the act of fellatio and that such act was the result of defendant's use of force against her.

Defendant next contends that prosecutorial misconduct denied him a fair trial. He posits that (1) while calling an assistant State's Attorney assigned to the felony review unit to testify, the prosecutor asserted a personal and official belief as to defendant's guilt; (2) that certain of the prosecutor's remarks portrayed him as sexually impotent, deviant, callous, egocentric, stupid, deceptively calculating, and injected extraneous and inflammatory material into the case; (3) that after receiving adverse rulings from the trial court, the prosecutor persisted in asking the same questions; (4) that in closing argument, the prosecutor (a) commented on evidence

not in the record and made inferences that cannot be fairly drawn from the evidence, (b) invaded the province of the court by instructing the jury as to the law, and (c) made certain remarks which aroused the antagonism of the jury against defense counsel. To the contrary, the State argues that defendant waived consideration of these points by failing either to include them in his oral post-trial motion or to file a written motion and, alternatively, that even if these merits were considered he was not denied a fair trial.

All errors are preserved for review by an oral post-trial motion unless the State objects to such procedure. (*People v. Robinson* (1960), 21 Ill. 2d 30, 171 N.E.2d 11, *cert. denied* (1961), 365 U.S. 861, 5 L. Ed. 2d 826, 81 S. Ct. 832; *People v. Prohaska* (1956), 8 Ill. 2d 579, 134 N.E.2d 799; *People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257.) Such objection, to be effective, must include a request that the grounds for seeking post-trial relief be specified in writing. *People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576; *People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389.

Here, the prosecutor objected to the oral recitation of the grounds advanced as the basis for post-trial relief and expressly requested that defendant specify such grounds in a written motion. While the trial court for purposes of ascertaining the merits of defendant's motion allowed the oral recitation, we do not believe this excused defendant's compliance with the State's request for specificity. As defendant failed to specify during the course of his oral motion or to reduce to writing the instances wherein he contended that prosecutorial misconduct denied him a fair trial, he waived our consideration of such conduct as grounds for reversal or for the grant of a new trial. Moreover, for the following reasons we believe that, aside from the question of waiver, defendant's contention is without merit.

First, while a prosecutor may not argue that his personal and official prestige warrant the truthfulness of the evidence given by the State's witnesses (*People v. Vasquez* (1972), 8 Ill. App. 3d 679, 291 N.E.2d 5; *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256), where testimony is alleged to have prejudiced the jury, the test to be applied is whether the substance of such testimony—as opposed to what the jury might be speculated to have inferred therefrom—prejudiced the accused's right to a fair trial (*People v. Jackson* (1974), 23 Ill. App. 3d 945, 320 N.E.2d 591).

Here, the assistant State's Attorney who was assigned to the felony review unit was called to testify regarding certain statements made by defendant after his arrest. During the course of his testimony, it was disclosed that his duties as a member of such unit included the approval or rejection of charges against those under police suspicion of having committed criminal offenses. Defendant argues that the testimony

regarding the felony review unit implied that the witness and the prosecutor believed defendant to be guilty and were using their official prestige to warrant the truthfulness of this belief. However, we believe such argument to be without merit—not only as being purely speculative in nature but also because the substance of the testimony did not deny defendant a fair trial, as it is implicit that any jury in the ordinary course of events is informed that some member of the State's Attorney's office authorized the filing of charges against the accused when the charging document is read to it.

Second, whether prosecutorial remarks deny the accused a fair trial and require reversal is dependent upon whether the result might have been otherwise had the remarks not been made. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537; *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) It would unduly lengthen this opinion to detail each instance wherein prosecutorial remarks were alleged by defendant to have denied him a fair trial by besmerching his character and introducing inflammatory matter. Suffice it to say that our review of the record reveals that while some of the remarks complained of lacked taste and strayed somewhat from the circumspection expected of a trial attorney, we believe most of them concerned inferences raised by the evidence and the remainder were not of sufficient magnitude to be determinative of the result. Accordingly, we cannot say that such remarks denied defendant a fair trial.

■■ Third, while it is improper for the prosecutor to misstate the evidence in his argument to the jury, such conduct requires reversal only where it was a material factor in the accused's conviction. (*Wright*; *Witherspoon*.) Here, defendant complains that the prosecutor incorrectly stated that complainant and her mother were in the bathroom rather than the bedroom of their home when complainant announced that she had been raped. We do not believe that such misstatement was a material factor in defendant's conviction. This is particularly so here, where the prosecutor and the trial court cautioned the jurors that any misstatement of the evidence should be ignored and that they were to come to a decision based upon the evidence as they heard it.

Fourth, although a prosecutor should not invade the province of the trial court by instructing the jury as to the law in a given case, he may draw inferences unfavorable to the accused if based on the evidence. (*People v. Campbell* (1973), 13 Ill. App. 3d 31, 299 N.E.2d 439.) In *Campbell*, the prosecutor argued, "I don't think anybody says he [defendant] has got a right to struggle with a deputy. That is aggravated battery right there." (13 Ill. App. 3d 31, 34, 299 N.E.2d 439, 441.) There, it was held that the prosecutor did no more than articulate inferences raised by the evidence.

■■ Here, as noted above, on several occasions defendant threatened complainant that if she attempted to attract attention she would never return home again. During the course of argument, the prosecutor stated:

"* * * [T]ake a classic situation where somebody says your money or your life. Now, you might be the one that's putting out the wallet. That might be consent, not voluntary consent if you have just been threatened with your life. No difference than a rape case. Somebody threatens you with your life, you don't have to put your life on the line and expose yourself to a threat before there is a criminal act."

In the context of the evidence presented in this case, we do not believe that the argument was improper. *Campbell.*

■■ Fifth, though it is improper for the prosecutor to make statements about the conduct of defense counsel solely to arouse the antagonism of the jury against him (*People v. Green* (1973), 14 Ill. App. 3d 972, 304 N.E.2d 32, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3179), we see no such impropriety here. During the course of closing argument, defense counsel stated that complainant was afraid to tell her mother that she had been out with an older man; that after she told her mother what had transpired, her mother accompanied her to the hospital, police station, and the preliminary hearing; and that complainant therefore had an interest in seeing defendant convicted in the eyes of her mother. In response, the prosecutor replied, "Counsel wants me to apologize for the fact that [complainant] ran to her mother. I don't apologize. We will not apologize." Upon objection by defense counsel, the trial court instructed the jury to disregard such argument. While the prosecutor could have used more appropriate language to respond to the argument of defense counsel, we cannot accept the view of defendant that the remark so antagonized the jury against the defense so as to deny him a fair trial or that the instruction to disregard the remark failed to obviate any possible prejudice to defendant.

■■ Sixth, it is improper for the prosecutor to persist in asking the same question after receiving an adverse ruling on such question by the trial court. (*People v. Polenik* (1950), 407 Ill. 337, 95 N.E.2d 414; *People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351 N.E.2d 402.) Here, however, the two successive questions complained of each dealt with a different time period than the first question to which the defense objection had been sustained. Defense counsel had made a general objection to the first question, and it was sustained without further comment by the trial court. The prosecutor then attempted to cure what he perceived to be the objectionable portion of the initial question by amendment to a time relevant to the incident in question. Under the circumstances, we do not believe that the principles enunciated in *Polenik* and *Hovanec* were violated in the case at bar.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.