THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENT STIFF, Defendant-Appellant.

First District (6th Division)   No. 1—86—3077

Opinion filed June 23, 1989.

Michael Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Ina C. Kantor, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant Vincent Stiff was convicted of aggravated criminal sexual assault and aggravated battery. The trial court sentenced him to a term of 23 years' imprisonment. No sentence was imposed for the charge of aggravated battery. Defendant appeals, contending that the trial court improperly limited testimony regarding the victim's use of drugs; that prosecutorial remarks were prejudicial; and that his conviction for aggravated battery should be vacated where it was a lesser included offense of aggravated criminal sexual assault based on bodily harm.

The victim testified that on June 6, 1985, shortly after midnight, she drove to a game room where she played pool and looked for a friend, Willie. She saw defendant, whom she denied knowing, with several other men and heard him being called "Flavor." When the victim left the game room and walked across the street to her car, defendant approached her, grabbed the keys, pushed her into the car, and drove away. As she struggled, defendant struck her in the face with his fist, saying that he would take her to Willie. He parked the car and forced the victim into an abandoned building, repeatedly striking her in the face. Defendant raped the victim, as he held her down and continued to beat her. Defendant apologized, drove her back to the game room, and exited the car.

The victim testified that she drove for one block, stopped a police car, and reported that she had just been raped and beaten. Officer Quintin Black returned with her to the abandoned building, where they found her wallet, which she had not realized was missing. The victim was then treated at the hospital for her injuries. The victim identified defendant's photograph in a mug book and later identified

him in a lineup.

Officer Gregory Baiocchi testified that he met Black and the victim at the abandoned building on June 6, 1985, where he saw fresh blood on the remnants of a hide-a-bed.

Officer Black testified that at 3 a.m. on June 6, 1985, the victim stopped his squad car. She was crying and there was blood around her mouth. They went to the abandoned building, which was filled with debris and animal excrement. The victim's wallet was lying on the floor.

Dr. Barbara Robinson testified that on June 6 she examined the victim at the hospital. The victim was in a great deal of pain. She had suffered a fractured nose, perforated right eardrum, blackened right eye, cut lip, other facial lacerations, a sprained left ankle, and decreased range of motion in her neck and right arm. The vaginal vault held a large amount of white fluid and blood which did not result from menstruation. There was a tear at the base of the vaginal opening and blood, indicating forced intercourse. On cross-examination, Dr. Robinson emphasized that the vaginal abrasion was inconsistent with consenting intercourse, particularly where the victim had vaginally delivered two children.

Officer Lawrence Fenlon testified that the victim made the photographic identification. She said that defendant's name was "Little Vince" and gave him defendant's telephone number, which somebody had given her.

Officer Richard Rybicki testified that on June 25, 1985, he approached defendant on the street. Defendant ran, and Rybicki chased and apprehended him.

Mary Baker and Jenevae Sawyer testified for defendant that they had seen the victim and defendant together in the neighborhood. They did not know the victim personally.

Willie Bolden testified for defendant that he had planned to meet the victim at the game room on June 5 at 11:30 p.m. but she did not arrive. The court sustained the State's objections to questions of Bolden regarding whether he had ever used narcotics with the victim and whether he had ever had sex with her.

Defendant testified that at 11:30 p.m. on June 5 he saw the victim, who used to be his girlfriend. They argued, and he slapped her. Shortly thereafter, the victim offered him a ride. They drove to his cousin's apartment, where they drank champagne, watched a movie and had sex. The victim was high on crack. She dropped defendant off shortly after midnight. The court sustained the State's objections to defense counsel's questions regarding whether defendant could re-

member any other times when the victim appeared high.

On cross-examination, defendant testified that he first met the victim in summer 1984, when she was looking for crack. He helped her buy some crack. When he saw the victim on the night of June 5 she was not injured. He denied seeing her on June 6 and denied causing her injuries.

In rebuttal, the State introduced evidence of defendant's two prior robbery convictions.

■ Defendant first contends that the trial court improperly prevented the introduction of evidence showing the victim used narcotics. On direct examination, defendant was asked whether he had ever gotten high with her. The court sustained an objection as to foundation. Defendant then testified that he had seen the victim use narcotics on some occasion. Asked when, defendant replied, "The first night I met her." The trial court sustained an objection as to relevancy, struck the answer and instructed the jury to disregard the question and answer.

In addition, Bolden was asked whether he used narcotics with the victim at their first meeting, three days before the rape. The court sustained objections, struck the affirmative answer, and instructed the jury to disregard it. Defendant now complains that evidence of the victim's use of narcotics on the night of the offense was vital to her ability to observe, recall and accurately report events, and that the impact of general drug use would affect her overall truthfulness and credibility. Defendant concedes that no offer of proof was made at trial, but maintains that the "details" can be brought out in a new trial.

Notwithstanding the failure to object at trial or include the issue in his post-trial motions (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124), and the failure to introduce an offer of proof (see *People v. Stalions* (1986), 139 Ill. App. 3d 1033, 488 N.E.2d 297), we will address the issue. While evidence that a witness used drugs at or near the time of the crime may show an impaired ability to observe, recollect and narrate (*People v. Castiglione* (1986), 150 Ill. App. 3d 459, 501 N.E.2d 923), in the present case the stricken questions and answers did not focus on the victim's use of drugs at or near the time of the offense and therefore were improper. (See *People v. Castiglione* (1986), 150 Ill. App. 3d 459, 501 N.E.2d 923.) We find no abuse of discretion in the trial court's decision to limit this area of cross-examination. Moreover, as to the victim's use of drugs on the night of the offense, the court properly permitted testimony from her that she used no drugs that night and testimony from defendant that the victim did use crack that night.

Defendant's reliance on *People v. Stalions* is misplaced. In *Stalions*, this court held that it was improper to restrict cross-examination regarding the witness' glue-sniffing habit where an offer of proof showed the habit had lasted three years and may have affected her mental processes. No such suggestion or offer of proof was presented here which might place this case in a factual setting similar to *Stalions*.

■■ ■ Defendant next contends that prosecutorial comments in rebuttal closing argument distorted the evidence and unfairly attacked the defense. A prosecutor is allowed a great deal of latitude in closing arguments, and absent a clear abuse of discretion, the trial court's determination as to the propriety of the argument will be followed. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) The prosecutor argued here:

"PROSECUTOR: *** [T]here is no culture that accepts this, that tolerates this. None that I know of.

Ladies and gentlemen, defendant is surrounded by guilt. He has nowhere to go so he decides to kick out and lash out at the police and kick out and lash out—

DEFENSE COUNSEL: Objection, judge.

PROSECUTOR: —at [the victim]—

THE COURT: Overruled.

PROSECUTOR: —because he is stuck, he is trapped because the defense would have you believe that everybody lied here. Everybody made this up."

These comments were supported by the evidence of defendant's flight from the arresting police officer, the victim's and Dr. Robinson's evidence of the injuries suffered, and defendant's admission that he struck the victim. The comments were not improper.

■■ Defendant complains of prosecutorial argument that the case was "about freedom to go out at night"; "freedom to visit whoever you want to see"; "freedoms to shoot a game of pool, be with friends"; and "those such as the defendant who would take away those kinds of freedoms so he can satisfy his own dirty, filthy, selfish needs." A prosecutor may comment on the evils of crime, denounce the accused, and urge the fearless administration of justice. *People v. Thomas* (1988), 172 Ill. App. 3d 172, 526 N.E.2d 467; *People v. Grover* (1983), 116 Ill. App. 3d 116, 451 N.E.2d 587.

■■ Defendant also complains of the prosecutor's statements that defendant could not remember when he first met the victim and that defendant gave two different stories, first saying he was going to help her buy crack and then later saying he was taking her to visit

her aunt. Defendant testified on cross- and re-cross-examination that he met the victim outside a pool hall when she was looking for "happy sticks." He drove her to a place where she bought some crack and smoked it. The victim then asked defendant to drop her off at the hospital to visit her aunt. On recross, the prosecutor insisted, "Didn't you just testify two minutes ago that you met her because she wanted to buy happy sticks?" Defendant again stated: "That's when I first met her. *** She was looking for a stick. She smoked the stick, she said, 'Would you drop me off at the hospital? My auntie down there.' I say, 'Yeah, I drop you off.' " Thus, defendant did not offer two contradicting stories of their first meeting.

It is improper for a prosecutor to misstate the evidence. However, no reversal is necessary here where the issue of whether defendant drove the victim to see her aunt in the hospital was not a material factor in defendant's conviction, particularly where he was able to testify about the victim's alleged use of drugs on that first meeting. See *People v. McKnight* (1979), 72 Ill. App. 3d 136, 390 N.E.2d 379.

■■ ■ The prosecutor also commented that a person who has been convicted of a felony does not have respect for telling the truth. The prosecutor is permitted to refer to defendant's prior conviction in regard to defendant's credibility. *People v. Smith* (1980), 88 Ill. App. 3d 897, 410 N.E.2d 973.

In regard to the characterization of defendant as a liar, we have held that it is improper to charge a defendant with lying only where there is no basis for that charge in the record. (See *People v. Thomas* (1988), 172 Ill. App. 3d 172, 526 N.E.2d 467; *People v. Strange* (1984), 125 Ill. App. 3d 43, 465 N.E.2d 616.) There was some basis in the record for the charge. Defendant admitted striking the victim and then later having consenting sex with her, yet denied causing her the injuries. Her testimony, with corroboration from that of the police officers, evidence at the abandoned building, and the medical evidence, established the contrary. Furthermore, these arguments were made in rebuttal in response to defense counsel's repeated accusations in closing argument that the victim lied when she testified. (See *People v. Thomas* (1988), 172 Ill. App. 3d 172, 526 N.E.2d 467.) Moreover, if the comments were improper, we believe that the trial court's instruction to the jury to disregard any misstatement of the evidence makes reversal unwarranted. See *People v. Washington* (1984), 127 Ill. App. 3d 365, 468 N.E.2d 1285.

■■ ■ Defendant complains that the prosecutor unfairly attacked defense witnesses and accused defense counsel of fabricating a defense in the following comment:

"PROSECUTOR: You heard the solid, credible, believable testimony from [the victim] and the police officers who investigated. And then you heard about the story from all the defense witnesses. The ladies in the neighborhood. I don't want to go through the testimony with you because you listened. You saw what they had to say. Needless to say, they are friends of the family. They want to help out [defendant's family]."

The prosecutor may comment on the credibility of the witnesses. (*People v. Thomas* (1988), 172 Ill. App. 3d 172, 526 N.E.2d 467.) We find no error here.

We conclude that, taken as a whole, the entire record, including closing arguments, establishes that the prosecutorial comments at issue did not improperly prejudice defendant or require reversal. Moreover, proper jury instructions were given to disregard argument not based on the evidence and to consider only the evidence presented to the jury. See *People v. Perez* (1983), 113 Ill. App. 3d 143, 446 N.E.2d 1229.

■■■ Defendant finally contends that he was improperly convicted of aggravated battery since it was a lesser included offense of aggravated criminal sexual assault, and the State agrees. The conviction for aggravated battery must be vacated. (See *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) We find it unnecessary to remand for resentencing. There is no indication that the vacated conviction was considered in sentencing defendant for the aggravated criminal sexual assault conviction. (See *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v Johnson* (1987), 161 Ill. App. 3d 551, 515 N.E.2d 173; *People v. Hines* (1982), 105 Ill. App. 3d 35, 433 N.E.2d 1137.) The 23-year sentence falls within the maximum 30-year sentence permitted for Class X felonies and was proper in view of the particularly brutal nature of the attack, the serious injuries suffered by the victim, and the fact that defendant has been convicted of robbery twice. We find no abuse of discretion.

Accordingly, the judgment of conviction for aggravated criminal sexual assault is affirmed. The judgment of conviction for aggravated battery is vacated.

Affirmed in part, vacated in part.

QUINLAN and LaPORTA, JJ., concur.