THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE MILLIGHAN, Defendant-Appellant.

First District (3rd Division)   No. 1—90—3258

Opinion filed June 29, 1994.—Rehearing denied September 1, 1994.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Leslie A. Quade, Assistant State's Attorneys, and Janet Mahoney, Special Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

After a jury trial, defendant, Wayne Millighan, was convicted of murder and armed robbery and sentenced to two consecutive terms of imprisonment: 40 years for the murder and 30 years for the armed robbery. It is from the judgment of conviction that defendant now appeals to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

On appeal, defendant argues that: (1) he was denied a fair trial by improper remarks made by the prosecution; (2) he was denied a fair trial when the State shifted the burden of proof to him by cross-examining him regarding his failure to produce witnesses to corroborate his alibi; (3) he was denied a fair trial by improper admission of evidence that he had shot another individual before the offenses at issue in this case; (4) he was denied a fair trial after the State built up its witnesses' identification of defendant with irrelevant testimony; (5) he was denied a fair trial when the trial court improperly sustained certain objections made by the State during defense counsel's opening and closing statements, resulting in jury confusion as to the burden of proof; (6) he was denied a fair trial by the cumulative effect of these cited errors; and (7) the trial court abused its discretion in sentencing him.

For the reasons which follow, we affirm.

## FACTUAL BACKGROUND

The facts of this case are as follows: At approximately 1 a.m. on April 10, 1986, M & R Food and Liquor Store was robbed by three men. The store's owner, Nazih Yousef, was killed by one of the men in the rear of the store. One robber stayed at the outside door while the second robber remained in the front of the store and emptied the

cash register while holding two employees at gunpoint. Prior to the robbery, defendant was involved in a shooting of Donnell Collins at about 1 a.m., who was walking with Loretta Jackson. Apparently, defendant made a comment to Jackson, and Collins countered, with defendant then shooting Collins in his thigh with a silver-plated gun. Jackson testified at the trial to this and, further, that defendant had told her by telephone to tell Cecilia Hale, her sister-in-law, not to identify him in court. While Collins was being transported to the hospital, Hale looked out of her window and saw defendant with two other men go into the liquor store. In addition, there was testimony that Jackson returned and told Hale that defendant had shot Collins.

The two liquor store employees present during the robbery, Mohammed Grayyib and Hussein Awwad, testified through interpreters. They recounted that Yousef had hired defendant as a stock boy two days before the robbery. Yousef had discharged defendant the day before the robbery. Grayyib stated that on the night of the robbery, defendant had entered the store with three other men and stayed for about 30 minutes. Some time later, after 1 a.m., two men kicked in the door to a restricted area of the store. One of the men went to the liquor section, and this man had been seen with defendant earlier that night. Defendant had a silver gun and announced, "It's a stick-up." Grayyib yelled to Awwad and explained that the robber wanted the cash register opened. Grayyib opened it and the man took the cash drawer. A shot was heard and the other robber came from the back room carrying a sack of money and a black gun, and all three men left the store. Yousef had been shot.

Awwad testified similarly to Grayyib. Another store employee, Achmaad Hassan, indicated that he was in the cooler during the robbery and heard a shot, and when he came out, he saw Yousef on the floor. Hassan confirmed that defendant had been in the store earlier that night. Awwad looked at a group of photos and identified Michael McCoy as one of the men who was with defendant at that time earlier that evening. On April 11, Grayyib and Awwad viewed various photos. Grayyib identified defendant as the man who took the cash drawer and money; Hassan stated that defendant was the man who had worked for them and whom he had seen earlier in the store the night of the crime.

Subsequently, about two weeks after the robbery, defendant was arrested in Milwaukee for the crimes at issue in this case. A lineup was arranged wherein Grayyib and Awwad identified defendant as one of the offenders and as having been in the store earlier that evening. Grayyib and Awwad identified Michael McCoy in a lineup as the robber who went to the rear of the store and shot Yousef.

Defendant testified at trial that on the evening of the crime, he had visited a jazz club located at the intersection 49th Street and Cottage Grove Avenue, leaving the club at about 11 p.m. and returning to the Stateway Gardens housing project, and after returning, went across the street to the liquor store to buy cigarettes. Defendant stated that he went alone and stayed at the store for about five minutes, and then returned to 3618 South State Street, where he talked with people that he knew. At about 1 a.m., Jackson, whom defendant formerly dated, came into the "Breezeway" at Stateway Gardens. According to defendant, Donnell Collins appeared and started an argument with him and then struck him. In the fist-fight, Collins supposedly reached under his jacket, and then defendant shot him. Defendant stated that he went to the nearby home of his brother-in-law, Kim Hicks, staying there until morning, and from there, to his mother's home in Wisconsin, because he thought the police would be looking for him.

The jury found defendant guilty of murder and armed robbery.

## OPINION

We first examine defendant's contention that he was denied a fair trial due to improper prosecutorial remarks. Specifically, defendant asserts that the State inappropriately exploited the Collins shooting; insinuated that defendant had threatened to kill Hale; relied upon McCoy's nickname "Iceman" and defendant's "peculiar nickname" to inflame the jury; and misstated the function of the jury. The State initially urges that defendant has waived review of this alleged prosecutorial misconduct. Defendant failed to speak to the waiver issue in his reply brief. After a careful review of the record, we conclude that the State is correct and that this issue is not cognizable on appeal.

●1 Addressing this issue, our supreme court has held that, absent plain error, "*[b]oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) "Furthermore, it is not sufficient to merely refer to a cited error in a post-trial motion as 'prejudicial,' 'inflammatory' or 'erroneous' without factual detail; doing so is inadequate to preserve an issue on appeal." (*People v. Medeiros* (1993), 249 Ill. App. 3d 139, 140, 618 N.E.2d 1065.) In the case *sub judice*, defendant waived review of the issue by failing to make contemporaneous objections at trial, failing to include the cited error in his post-trial motion or, when an alleged error was included in the post-trial, failing to make anything more than a general averment of error with no factual detail whatsoever.

We now turn to the question of whether the prosecution effectively shifted the burden of proof to defendant by cross-examining defendant as to his failure to produce witnesses to back up his testimony and commenting upon this fact during closing argument. During this cross-examination, defendant was asked as to whether he could identify or remember any of the people at the jazz club. Defendant responded in the affirmative. Defendant's counsel objected and was overruled. There was a continuation of questions as to whether or not defendant remembered the names of who he was with at this club, and he indicated as follows:

"A. I don't know right off hand, but I know nicknames.

Q. But this happened in '86, right? A couple of years, right?

A. I don't know names, I know nicknames."

Later, the prosecutor probed defendant about the half-hour spent in the Breezeway between returning with the cigarettes and meeting Jackson and Collins. Questions were asked about who was in the Breezeway, about how many people were there, and whether he could remember them. Defendant indicated he could not remember their names, even though there were people around. The trial court finally told the prosecutor to move on, that the witness indicated that he did not remember the names, after a series of questions relating to the people that were supposedly in the Breezeway. Later, the prosecutor commented on this issue in closing argument.

It is settled law that a criminal defendant is under no obligation to present evidence to prove his innocence as it is the State that has the burden to prove beyond a reasonable doubt all material and essential facts constituting a crime. (*People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500; *People v. Lopez* (1987), 152 Ill. App. 3d 667, 504 N.E.2d 862.) However, once a defendant testifies on his own behalf, he subjects himself to legitimate and pertinent cross-examination. (*People v. Torres* (1985), 130 Ill. App. 3d 775, 474 N.E.2d 1305.) As a general rule the scope of cross-examination is limited to matters covered on direct examination (*People v. Gross* (1988), 166 Ill. App. 3d 413, 519 N.E.2d 1043); however, the general rule is modified to the extent that cross-examination may develop all circumstances within the knowledge of the witness which explain, qualify, discredit or destroy his testimony on direct examination. (*People v. Franklin* (1990), 135 Ill. 2d 78, 552 N.E.2d 743.) A trial court's decision as to what is within the proper scope of cross-examination is within its sound discretion and will not be disturbed by a reviewing court absent a clear abuse of that discretion which results in manifest prejudice to the defendant. *Franklin*, 135 Ill. 2d at 96.

●2 We believe the facts of the case *sub judice* are analogous to

those of *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170. In *Blakes*, the defendant was charged with robbery and at trial testified on direct examination that he was at a private club when the robbery took place and remained there for five hours. The prosecution cross-examined the defendant concerning his familiarity with the people who frequented the club and the club's employees. The prosecution asked the defendant on cross-examination who was in the club on the night of the robbery when he was ostensibly there. In holding this line of questioning permissible, the *Blakes* court noted that the failure to call a witness or produce evidence cannot be relied on as substantial proof of the crime; nonetheless, if other evidence tends to prove the guilt of a defendant and such defendant fails to bring in evidence within his control in refutation or explanation, his omission to do so is a circumstance entitled to some weight in the jury's mind, and, as such, is a legitimate subject of questioning and comment by the prosecution. Accordingly, there was no error in the case at bar as the prosecution was merely questioning defendant on his alibi brought out on direct examination. Additionally, as defendant failed to refute or explain the eyewitness testimony of the liquor store employees, which tended to prove that he committed the crime, his omission to do so was legitimately attacked by the prosecution.

Assuming, *arguendo*, that the trial court's rulings with regard to the State's questioning and comments were somehow in error, we fail to see how defendant suffered any prejudice. Moreover, any harm that might have occurred was cured by the trial court's appropriate jury instructions on the burden of proof. See *People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895; *People v. Stiff* (1989), 185 Ill. App. 3d 751, 542 N.E.2d 392.

Next, defendant claims the trial court erred in permitting the admission of evidence that he had shot Collins. Evidence of other crimes or wrongful acts is inadmissible to show a defendant's character or propensity to commit a crime. Thus, where the evidence has no value beyond the inference that a defendant has a propensity for the crime with which he is charged, such evidence is excluded. The law holds suspect the inference that because an individual committed other crimes, he is more likely to have committed the crime charged. However, other crimes evidence is admissible if it is relevant for any purpose other than to demonstrate a defendant's character or propensity to commit crime. Thus, other crimes evidence is admissible to prove, among other things, *modus operandi*, motive, knowledge, intent, absence of mistake or accident, defendant's state of mind, absence of an innocent mind frame or the presence of criminal intent, circumstances or context of defendant's arrest,

placement of defendant in proximity to the time and place of the crime, identification of the weapon used in a crime, consciousness of guilt, to show a common design, scheme or plan, circumstances of a crime charged that would otherwise be unclear, whether a crime charged was actually committed, opportunity or preparation, a defendant's dislike or attitude toward the victim, to explain an otherwise implausible fact relating to the crime charged, to contradict on rebuttal a defendant's denials, to disprove a defense of entrapment and to disprove an alibi defense. *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484-85, 485 N.E.2d 1292.

●3 The State asserts that evidence of the Collins shooting was relevant to prove defendant's identity. We agree. Defendant's theory of the case was one of mistaken identity. During the presentation of opening statements, defendant's counsel raised the issue of identity when he indicated that the eyewitnesses to the crime had not told the police that defendant had worked in the store. Defense counsel further stated that the eyewitnesses did not properly identify defendant's weight or height and that their description of him was scant in details. Additionally, defense counsel questioned the liquor store employees and police officers' descriptions of the offenders. Finally, defense counsel, in closing argument, indicated that the only issue in the case was the identification of defendant. Therefore, the testimony of Jackson and Hale was pertinent as it corroborated the store employees' identification of defendant. Moreover, the testimony of Jackson that defendant shot Collins with a small silver handgun corroborates testimony from the store employees that defendant held them at gunpoint with a small silver handgun while he emptied money out of the cash register. Aside from showing identity, this evidence is also admissible for purposes of identifying the weapon used in the crime. (See *People v. Carter* (1967), 38 Ill. 2d 496, 232 N.E.2d 692.) Accordingly, we find no error in the admission of this evidence.

Defendant next contends that he was denied a fair trial after the State built up its witnesses' identification of him with irrelevant testimony. Specifically, defendant claims that he was prejudiced by evidence that three of the State's witnesses identified McCoy as the gunman in the pretrial identification procedures as such identifications of McCoy were irrelevant and improperly bolstered the witnesses' identification of defendant. We disagree.

●4 "[B]efore evidence of any kind is admissible, it must be relevant. [Citations.] Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 487-

88, 485 N.E.2d 1292; see also Fed. Rules Evid. 401, 402.) Here, evidence of McCoy's involvement was relevant to establish that defendant had acted in concert with him.

Defendant next submits that he was denied a fair trial when the trial court improperly sustained certain objections made by the State during defense counsel's opening and closing statements, resulting in jury confusion as to the burden of proof. We do not think this is so.

"The right to argue a cause in a criminal case is absolute, though subject to the discretionary power of the trial judge to control, within reasonable limits, how the right shall be enjoyed." (*People v. Jayne* (1977), 52 Ill. App. 3d 990, 1012, 368 N.E.2d 422; see also *People v. Diaz* (1971), 1 Ill. App. 3d 988, 275 N.E.2d 210.) Absent an abuse of such discretionary power, a trial court's ruling regarding the character and scope of closing argument shall not be disturbed. *People v. Guyen* (1983), 117 Ill. App. 3d 522, 533-34, 453 N.E.2d 849.

•5 The thrust of defendant's argument with regard to this issue is that because the trial court sustained the State's objections, defense counsel was prevented from arguing his case and jury confusion ensued. We believe that the trial court was merely emphasizing that its role is to explain the law to the jury and not the function of counsel and, therefore, the trial court did not abuse its discretion. Furthermore, the jury was given Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981) and was instructed by the trial court on it. Thus, any possible error that may have occurred was cured and, therefore, harmless. *People v. Myles* (1985), 131 Ill. App. 3d 1034, 476 N.E.2d 1333.

Defendant also urges that, in the aggregate, the aforementioned alleged errors require reversal. However, as we have demonstrated above, each of defendant's claims lack substance and, therefore, it follows that they cannot collectively have force.

Finally, defendant asserts that the trial court abused its discretion in sentencing him to two consecutive sentences: 40 years for murder and 30 years for armed robbery. Defendant maintains that the maximum sentences for murder and armed robbery were excessive in view of defendant's potential for rehabilitation, plus the fact that Yousef was not shot by defendant. We could not more strongly disagree.

Pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), the appellate court has the power to reduce sentences. The basic issue on review is whether the trial court abused its discretion in imposing the particular sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) An abuse of discretion can be found in a sentence that is within the statutory limitations if that sentence is greatly at variance

with the purpose and spirit of the law. (*People v. Steffens* (1985), 131 Ill. App. 3d 141; see also *People v. Gibbs* (1977), 49 Ill. App. 3d 644.) The 1970 Illinois Constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

Our review of the record reveals that the trial court decided that consecutive sentences were needed after carefully and thoughtfully considering the circumstances and type of offenses committed, as well as balancing defendant's rehabilitative potential and the need to protect the public.

•6 The trial court, while noting that defendant was not the trigger man, planned the armed robbery and cold-blooded murder of Nazih Yousef—a man whose mistake was that he had given defendant a job. Defendant held the store employees at bay while McCoy forced Mr. Yousef to get down on his knees and then executed him. The trial court stated that it took account of the minimally educated defendant's youthfulness and what could be euphemistically termed defendant's work history, which consisted of nothing more than a few months of shiftlessly wandering from one job to the next. Defendant had one prior misdemeanor conviction for unlawful use of a weapon and, as a juvenile, was twice found delinquent for the commission of aggravated battery. He never lived in one place, but he simply floated between the homes of various women with whom he had relationships. During this time, defendant managed to father three children by three different women; never providing support for any of the children. In light of the foregoing, the consecutive sentences of 40 years' imprisonment for murder and 30 years' imprisonment for armed robbery were by no stretch of the imagination an abuse of discretion.

For the above-cited reasons, the judgment of conviction entered by the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and CERDA, JJ., concur.