THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES E. SMITH, a/k/a Isaac Foster, Defendant-Appellant.

Fourth District   No. 4—86—0326

Opinion filed June 15, 1987.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and James W. Ackerman, all of State's Attorney's Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Defendant, James E. Smith, a/k/a Isaac Foster, was convicted by a jury of forgery and theft over $300. Prior to trial, the circuit court of McLean County denied Smith's motion to quash the arrest and suppress the evidence. Smith appeals the conviction on the grounds that the police did not have probable cause to arrest when the vehicle was initially stopped by police and, therefore, the evidence discovered as the result of a subsequent search was inadmissible.

The facts leading to the arrest and conviction of the defendant arise from transactions occurring at various McLean County banks which allegedly were all part of one scheme to secure funds from the banks after the deposit of stolen checks. In all the incidents, the ac-

counts were opened and then used in an attempt to process stolen checks and the persons attempting the transactions were all seen leaving the areas in a white Ford Mustang bearing Florida license plates.

On November 14, 1985, a man identifying himself as Michael J. Novak opened an account at the Bank of Illinois in Normal with $100. Novak returned the next day and deposited a check for $9020.55, which was later reported as stolen. Novak returned again on November 19 and withdrew $3,500 from the account. Later that day, Novak went to a different branch of the bank and attempted a $2,500 withdrawal which was refused. The following day, Novak went back to the main branch and attempted the identical transaction. The bank teller informed Novak that there was a problem with the account. When the teller went to inform her supervisor, Novak left the bank. This final transaction was recorded on videotape.

Also on November 14, 1985, and initially considered as an unrelated incident by police, a woman identifying herself as Mary Ann Garrity opened an account at the McLean County Bank in Bloomington. Bank personnel identified her as being approximately 35 to 40 years old and wearing a fur coat and high boots. The next day, she deposited a check for $21,000 drawn on a Kemper Money Market Account in the name of Dohr. Later that day, she attempted to withdraw $4,500 from the account at the bank's Normal College Hills Mall branch, but the transaction was refused. On November 19, Garrity attempted the identical transaction at the bank's main branch but was again refused. A bank employee followed Garrity from the bank. Information was obtained from a gas station attendant who observed Garrity get into and leave the area in the car. A few days later, Garrity called about withdrawing some money from the account and was told to come to the bank and she would be permitted to withdraw the money.

The Normal police department had been involved in an investigation of a series of incidents at McLean County area banks involving an individual representing himself to be Michael J. Novak. On November 21, the Normal police went to the Bank of Illinois following the incident that had been reported. Normal police initiated a teletype to all area police departments requesting information on any banking activity conducted under the Novak name. This teletype was received by the Pontiac police on the same day.

On November 22, Michael Novak entered the west branch of the Pontiac National Bank. He gave Robert Meiner, the assistant manager, a check and a deposit slip requesting to deposit the check and

withdraw $40. The bank had received a bulletin concerning the activities of Michael Novak, and when Novak left the bank Meiner observed him getting into the white Mustang. Meiner wrote down the license plate number and gave it to a bank security officer and a Pontiac police officer. Meiner also described the other occupants of the vehicle. There were two males. The first was described as a white male in his mid-twenties with long, straight black hair, dark glasses and the beginning of a beard. There was also a 60-year-old, five-foot tall black male with no facial hair wearing a suit and hat. There was also a woman in the vehicle but Meiner did not get a good look at her.

While taking the report at the Pontiac National Bank, officers were notified that Novak was attempting another transaction at the Bank of Pontiac and had been apprehended by another Pontiac police officer. Pontiac police then broadcast a radio request to apprehend the white Mustang. Pursuant to the previous teletype, Pontiac police notified the Normal police, who sent an officer to Pontiac. This officer recognized the individual as the person who had been videotaped during a transaction at the Bank of Illinois in Normal.

The Illinois State Police stopped the Mustang bearing Florida license plate number 254 ZDJ approximately 27 miles north of Pontiac. The trooper identified the occupants of the car as Louise Smith, Mark Scott, and the defendant, James E. Smith, who was then using the name of Gregory Packnett. The trooper informed them as to why they were being stopped and requested that they follow him to the Pontiac police department for questioning. The trooper retained custody of defendant's driver's license and had Mark Scott ride with him in the police car. En route to Pontiac, the trooper was contacted by radio and asked if he had found a brown briefcase containing fraudulent checks. The trooper visually searched the passenger compartment and the trunk area after asking the defendant to open it, but the trooper did not find any briefcase.

The Mustang and its occupants were turned over to Pontiac police in Odell. The police advised the defendant of his rights and he signed a consent form permitting police to search the Mustang. The search revealed the brown briefcase, a fur coat, and a manilla envelope containing seven checks written on the account of American Pouch Food Company in the amount of $450. One of the checks was made payable to the order of Mary Ann Garrity and three others were payable to Michael J. Novak.

The defendant contends that, at the time he was initially taken into custody, insufficient facts existed to support a finding of probable cause. He argues that this necessarily leads to the conclusion that his

statements and the evidence seized from the car must be suppressed as the fruits of the illegal arrest.

The State contends that the initial stop of the Mustang by State Police was not an arrest and merely an investigatory stop and that an arrest did not occur until Pontiac police took custody of the defendant. They further contend that the requisite probable cause existed at that time to support a valid arrest. Even if the arrest was invalid, the State argues that the evidence is still admissible because the defendant voluntarily consented to the search.

■ ■ We find no merit in the State's assertion that the initial stop of the Mustang by the State Police did not constitute an arrest. Although a person is considered to be under arrest only when his or her freedom of movement is restrained by an officer's physical force or show of authority, an arrest is determined by ascertaining whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. The understanding of the arrestee is not measured against the arrestee's subjective beliefs but rather against what a "reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." (See R. Ruebner, Illinois Criminal Procedure 5-6 (1987).) In this case, the trooper requested that the defendant follow him to Pontiac, he kept the defendant's driver's license, and he had one of the passengers travel with him in the police car. In view of the circumstances, the State Police had effectuated an arrest and not merely an investigatory stop.

■ ■ Our next inquiry is whether probable cause existed at the time the Mustang was stopped and the defendant arrested. Probable cause for arrest exists if "[t]he facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, 230.) However, the trooper in this case need not have possessed all the information personally to formulate the requisite probable cause. It is proper for police officers to rely on and consider hearsay provided by other police officers. If the officers are engaged in a common investigation or are working in concert, the information can be used to establish probable cause. (*People v. Poe* (1971), 48 Ill. 2d 506, 272 N.E.2d 28; *People v. Rose* (1979), 75 Ill. App. 3d 45, 393 N.E.2d 698.) Moreover, in later assessing whether probable cause existed, a purely objective inquiry into the reasonableness of the police officer's conduct is utilized; that is, in retrospect it is irrelevant what the officer subjectively believed. *People v.*

*Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275.

■ In this case, when the trooper responded to the radio dispatch and located the Mustang, he became part of the common investigation and was acting in concert with the members of the Normal and Pontiac police departments. Although Pontiac police had no knowledge of the Bloomington bank transactions involving the woman, Garrity, information possessed by the Pontiac radio officer about the Normal and Pontiac incidents involving Michael Novak was sufficient to constitute probable cause for an arrest. This in turn put the State trooper in the same shoes as that officer and was sufficient to support a finding of probable cause to permit the trooper to make the arrest. In view of these determinations, we hold that sufficient probable cause existed for the defendant's arrest and that the trial court was correct in denying the defendant's motion to quash the arrest and suppress the evidence.

For the foregoing reasons, the judgment of the circuit court of Mc-Lean County is affirmed.

Affirmed.

BARRY, P.J., and WOMBACHER, J., concur.