NO. 4-07-0535          Filed 4/3/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|       Plaintiff-Appellee, | ) | Circuit Court of |
|       v. | ) | Champaign County |
| ERIKA M. LINDMARK, | ) | No. 06CF483 |
|       Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey Ford, |
| | ) | Richard P. Klaus, |
| | ) | Judges Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

In January 2007, a jury found defendant, Erika M. Lindmark, guilty of driving under the influence of alcohol (DUI) while her driver's license was suspended (625 ILCS 11/501(a)(1) (West 2006)) (count I) and driving with a suspended license (DWS) (625 ILCS 5/6-303(a) (West 2006)) (count II).  The trial court later vacated count II.  In March 2007, the court sentenced defendant to 180 days in the Champaign County jail plus 30 months' probation on count I.  Defendant appeals.

Although defendant raises several substantive arguments on appeal, the inadequate record provided severely hampers this court's review.  For the reasons that follow, we affirm.

I. BACKGROUND

On March 1, 2006, defendant was arrested for DUI and DWS.  Following her arrest, defendant performed a breath test showing she had a breath-alcohol concentration (BAC) of 0.167.

On March 22, 2006, the State charged defendant with

driving while her BAC was equal to or greater than 0.08 and while her license to drive was suspended due to her prior violation of section 11-501.1 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501(a)(1) (West 2006)). See 625 ILCS 5/11-501(c-1)(1) (West 2006) (providing that driving under the influence while one's license is suspended for, among other reasons, a violation of section 11-501.1 of the Vehicle Code, constitutes a Class 4 felony). On January 5, 2007, the State charged defendant with count II, DWS (625 ILCS 5/6-303(a) (West 2006)).

Defendant filed numerous pretrial motions. On January 17, 2007, the trial court held a hearing on the pending motions. Only a partial transcript of the January 17, 2007, hearing is contained in the record on appeal. An examination of the pretrial motions relevant to this appeal follows.

A. Pretrial Motions

1. Motion To Suppress the Breath Test

In December 2006, defendant filed a motion to suppress the breath test. The motion alleged that the protocol for the operation of a breath test requires the operator observe the subject for a 20-minute period to ensure the subject does not regurgitate, burp, belch, or otherwise bring contents from the stomach or esophagus into the mouth because that will produce an inaccurate reading. Defendant claimed the results of her breath test were invalid because the operator did not properly observe defendant to ensure she did not bring stomach contents up into her mouth.

At the January 17, 2007, hearing, defendant testified that she suffered from acid reflux. Defendant claimed she burped during the observation period. On cross-examination, defendant admitted the officer asked her if she had any illness prior to the breath test, and she did not tell him she had acid reflux. Defendant testified she did tell the officer she was "sick earlier that day."

The trial court viewed the videotape showing the observation of defendant. The videotape, which was admitted into evidence, is not contained in the record on appeal. The court concluded the observation by the officer complied with statutory and case-law requirements. The court noted that defendant yawned, but the court saw nothing that implicated the guidelines with respect to the breath test. The court denied the motion to suppress the breath test.

## 2. Motion To Suppress Statements

In December 2006, defendant filed a motion requesting the trial court suppress all statements made by defendant during her custodial interrogation. In the motion, defendant alleged that the officer failed to make an adequate determination that defendant understood her Miranda rights (Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) and failed to obtain a knowing and voluntary waiver of those rights.

At the January 17, 2007, hearing on the pretrial motions, patrol sergeant Adam Chacon testified that on March 1, 2006, he stopped defendant's vehicle. After a DUI investigation,

he placed defendant under arrest for DUI and transported her to the satellite jail in Champaign County.

After defendant performed the breath test, Sergeant Chacon used his Miranda card and read defendant the Miranda warnings. Sergeant Chacon told defendant she could choose to answer or not answer the questions. Defendant appeared to understand what he was saying. Defendant told Sergeant Chacon she was 25 years old, a high school graduate, and attended the "University."

On cross-examination, Sergeant Chacon admitted it was cold that evening, and defendant exhibited signs of being cold. After defendant was arrested, Sergeant Chacon noticed defendant was shivering.

Sergeant Chacon testified he gave defendant the opportunity to waive her Miranda rights by asking her if she was willing to discuss the matter further. The trial court admitted into evidence People's exhibit No. 2, a videotape of the interrogation. The parties' arguments were not transcribed and the videotape is not contained in the record on appeal. The following exchange took place during the hearing:

"Q. [(Defense counsel)]: All right. Did you ever say to her--

THE COURT: You may resume your seat, Officer.

Q. --are you willing to waive those rights and talk to me?

- 4 -

A. No.

Q. You started asking her questions?

A. Yes.

* * *

Q. You never got her to say that she was willing to waive the right to speak to you, did you?

A. I didn't see it in that portion of the video you showed.

Q. Do you want to see another portion?

A. I don't think that it's going to assist me in any way. I said what was on the video. I don't remember every word I said on the video."

The trial court denied the motion to suppress statements.

### 3. The Horizontal Gaze Nystagmus Test

In December 2006, defendant filed a motion to suppress the horizontal gaze nystagmus (HGN) test results. Defendant alleged the results must be excluded because the officer did not conduct the HGN test as required by this court's decision in People v. Kirk, 289 Ill. App. 3d 326, 681 N.E.2d 1073 (1997). In January 2007, defendant also filed a fifth motion in limine seeking to bar the State from introducing evidence regarding the results of the HGN test unless the State first established the reliability of the test at a Frye hearing (Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923)(addressing the standards for

permitting evidence of a scientific test)).

At the January 17, 2007, hearing on posttrial motions, the trial court asked the State whether it intended to introduce evidence regarding the HGN test at trial. The assistant State's Attorney responded, "No, Your Honor." The court stated, "I would take that to mean that you would simply agree to the motion." The transcript then reads, "Proceedings not transcribed herein." The court then stated on the record:

"Well, I wouldn't necessarily have procedurally couched it that way, [defense counsel], but the State will be barred from eliciting or introducing into evidence any evidence regarding the HGN test. The motion to suppress the HGN test is moot. The fifth motion in limine is granted in part and denied in part. The law does not require me to--or require the State to have a Frye hearing. The State can seek a Frye hearing. The State does not seek a Frye hearing. I will not order a Frye hearing. However, I will grant that portion of the fifth motion in limine which seeks to bar an HGN test, because absent a Frye hearing, there can be no entry into evidence of an HGN test. All right, that resolves those motions."

In response to the trial court, defense counsel argued

the HGN test remained an issue because it was the basis for the officer's probable cause for arrest.  The transcript contains the following:

> "MR. ROBERTS [(Defense counsel)]: Not quite, because the HGN test was the basis for the officer's probable cause for arrest.
>
> THE COURT: Well that resolves those motions.  Then we'll address the issue of whether or not there was probable cause for the arrest in the other motions.  All right. (Proceedings conducted which are not transcribed herein.)"

The record is unclear whether the trial court proceeded to address probable cause.  However, on January 18, 2007, the day following the hearing and the day of trial, defendant filed a motion to "quash arrest" and suppress evidence.  The motion asserted that absent a showing that the HGN test has scientific validity, it could not be reasonably relied on in making a determination of probable cause.  Defendant argued that without probable cause, her arrest was illegal and all evidence that flowed from the arrest must be suppressed.

Also on January 18, 2007, the State filed a motion to strike defendant's motion to "quash arrest" and suppress.  The State argued that defendant's motion was untimely because it was filed more than 35 days after the discovery order was entered and no just cause existed why the motion could not have been filed in

- 7 -

a timely manner.

The trial court held a hearing on the matter that same day.  The State argued that the circuit court rules required all motions be filed within 35 days of the discovery order.  The State claimed the defendant was attempting to delay the trial.

Defense counsel noted that the previous day, the State indicated it would not offer HGN evidence at trial.  Defense counsel argued that this concession did not resolve the issue of a <u>Frye</u> hearing because the officer used the HGN test as a basis for probable cause for the arrest.  Defense counsel argued that because the HGN test was not admissible at trial without a <u>Frye</u> hearing, it could not be used to determine probable cause.

The trial court noted multiple problems with the motion to suppress, not the least of which was lack of timeliness.  The court observed that defendant's motion "presupposes that the [HGN] test was the only basis for probable cause, which ignores the substantial amount of other material."  The court found defense counsel had ample opportunity to address the matter in pretrial, and that the late-filed motion violated the court's standing order.  The court ordered the motion to suppress stricken.

### 4. <u>Bill</u> <u>of</u> <u>Particulars</u>

On January 9, 2007, four days after the State charged defendant with count II, defendant filed a motion for a bill of particulars.  Defendant sought particulars regarding the offenses defendant was alleged to have committed, including the date,

time, location, persons present who witnessed the alleged offenses, and the length of time the alleged conduct continued.

At the hearing on pretrial motions, the trial court noted that the arraignment occurred on June 1, 2006, and the State provided defendant with discovery on June 6, 2006. The court asked how the January 9, 2007, filing could be considered filed within a reasonable period of time after the arraignment. The transcript of the hearing does not contain defense counsel's response. The court denied the motion for a bill of particulars.

## B. The Trial

On January 18, 2007, the jury trial commenced. Sergeant Chacon testified he had been employed with the Urbana police department for nearly 13 years. He had received specialized training on how to investigate DUI cases and had been involved in 100 to 150 DUI investigations.

On March 1, 2006, at approximately 12:55 a.m., Sergeant Chacon saw a black, four-door Saab turn left on University Avenue, a well-lit intersection. Sergeant Chacon saw the vehicle strike the raised median of the roadway with all four tires.

Sergeant Chacon effectuated a traffic stop. He identified defendant as the driver of the vehicle. Defendant was wearing a lot of brightly colored beads around her neck. Sergeant Chacon testified the stop occurred around Mardi Gras and a lot of bars gave out beads. Sergeant Chacon further testified that an odor of alcohol emitted from the open driver's window. Defendant's eyes were watery and red, and her speech was "rather

slowed and slight[ly] slurred." Defendant told him she had three alcoholic drinks that evening.

Sergeant Chacon asked defendant for her driver's license and proof of insurance. He returned to his car to confirm defendant's driver's license status and check for outstanding warrants. In doing so, Sergeant Chacon learned defendant's license was suspended.

The trial court admitted, without objection, defendant's driver's license abstract from the Secretary of State (exhibit No. 4). Sergeant Chacon testified that the abstract reflected that on March 1, 2006, the status of defendant's driver's license was "suspended." Exhibit No. 4 is not contained in the record on appeal, although a blurry copy of the abstract is contained in the record as part of the State's discovery.

Sergeant Chacon called for an additional unit. Officer Chris Darr arrived. Sergeant Chacon asked Officer Darr to videotape the ensuing investigation.

Sergeant Chacon asked defendant to perform certain preexit tests that can be performed while sitting in the vehicle. According to Sergeant Chacon, preexit tests are good indicators of whether a person is impaired. Sergeant Chacon described the various preexit tests and defendant's performance on those tests. The three tests included the alphabet test (reciting the alphabet from a specific starting point to a specific ending point), the countdown test (counting backward from a particular number to another), and the finger-count test (use the thumb to touch the

tip of each finger in a sequence while counting out loud). Based on defendant's performance on the three pre-exit tests, Sergeant Chacon felt further investigation warranted and asked defendant to step out of her vehicle.

Sergeant Chacon testified the outside temperature was in the mid-40s. Defendant was wearing a "pretty substantial" leather coat and appeared to be dressed warmly for the weather.

Sergeant Chacon testified about the field-sobriety tests he asked defendant to perform, including the one-legged-stand test and the walk-and-turn test.

Sergeant Chacon identified People's exhibit No. 3 as a copy of the videotape of the field testing. The State moved to admit the videotape into evidence. Defense counsel did not object to admission of the videotape or publication of the tape to the jury. A portion of the videotape was played for the jury. The videotape is not contained in the record on appeal.

Sergeant Chacon testified that based on the total circumstances and information gathered, including defendant's driving behavior, beads, demeanor, speech pattern, the odor of alcohol, her acknowledgment that she had been drinking, and defendant's performance on pre-exit and field tasks, he believed defendant was impaired by alcohol. Sergeant Chacon placed defendant under arrest.

After defendant's arrest, Officer Darr transported her to the Champaign County satellite jail. Sergeant Chacon later joined her there.

- 11 -

Defendant ultimately took a breath test.  Sergeant Chacon testified he was certified to operate the Breathalyzer and conduct the breath test, the breath test was a model approved by the Department of State Police, and he followed the standards for administering it.  Sergeant Chacon identified, and the trial court admitted, (1) the breath-instrument log that showed defendant's result and the certification of accuracy performed on the machine and (2) the document showing defendant's breath-test result.

Sergeant Chacon observed defendant for 20 minutes to allow any alcohol that might still be in her mouth or upper digestive tract to either be absorbed, metabolized, or dissipated so that the result would only reflect the alcohol from defendant's breath.  During the observation period, defendant did not eat, drink, smoke, or put a foreign substance in her mouth. Defendant did not vomit during the observation period.

After the observation period, defendant performed the breath test.  The results indicated a BAC of 0.167.  The State sought and received permission to play the remainder of the videotape, apparently showing what occurred before and during the breath test.

On cross-examination, defense counsel played portions of defendant's exhibit No. 1.  That exhibit is not contained in the record on appeal.  Based on the comments made at trial, defendant's exhibit No. 1 was apparently a digital video disc (DVD) containing excerpts of the video recording of defendant's

pre-exit and field-sobriety tests.

After watching a portion of the DVD, Sergeant Chacon agreed defendant performed some aspects of the tests correctly. Defense counsel questioned Sergeant Chacon about a comment he made on the tape about not being "totally convinced." Sergeant Chacon testified he was not convinced at that point that defendant was not impaired by alcohol. Defense counsel also noted that after defendant finished walking for one of the tests, Sergeant Chacon said, "[V]ery good." Defense counsel asked whether Sergeant Chacon thought defendant's performance on the test was "very good." Sergeant Chacon responded, "That's not what I meant by very good, sir."

Sergeant Chacon admitted defendant exhibited signs of being cold. She was still rubbing herself at the jail trying to warm herself. Sergeant Chacon agreed defendant was never combative and was always cooperative. Sergeant Chacon testified the behavior of people under the influence runs the gamut of polite to combative. Sergeant Chacon described defendant's speech as showing slight to moderate slurring.

Defense counsel questioned Sergeant Chacon about the breath test. Sergeant Chacon testified the purpose of the 20-minute observation period was to allow any alcohol that might still be in the mouth to evaporate or be absorbed so that it does not interfere with the test reading. Defense counsel asked whether the observation included observing whether the subject regurgitated. Sergeant Chacon stated, "Well, if you mean vomit-

ing, yes." Sergeant Chacon agreed that by vomiting, he meant material is expelled out of the mouth. Sergeant Chacon also agreed that the reason he observes for vomiting is because if material comes up in the mouth from the stomach and has alcohol in it, that would affect the test result.

Defense counsel asked whether, once the material got into the mouth, it mattered if it was vomited out or swallowed. The State objected on the basis that the line of questioning was irrelevant to what the jury would be asked to determine at the end of the trial. The court sustained the objection.

Defense counsel questioned Sergeant Chacon about the observation period, apparently while that portion of the video-tape was playing. Defense counsel asked Sergeant Chacon what he was doing at various times during the observation period. At one point, in response to defense counsel's question, Sergeant Chacon stated that the videotape showed defendant put her face in her hands. Defense counsel asked whether anything was coming up from defendant's stomach when she put her face in her hands. The State objected, and the court sustained the objection. After the completion of Sergeant Chacon's testimony, the State rested.

On January 19, 2007, the trial resumed. That same day, the State filed a motion in limine seeking an order barring defense counsel from inquiring into or referring to matters relating to defendant's alleged acid-reflux symptoms, the effect such symptoms may have on the breath test, the alleged failure of Sergeant Chacon to properly observe defendant prior to the breath

test, or the effect such alleged failure may have had upon the breath test results.

The State argued that whether Sergeant Chacon conducted a proper observation was an issue of foundation as to the admissibility of the breath test and was previously adjudicated by the court. The State also argued that defendant's alleged acid reflux was not relevant to any issue the jury would be asked to decide. Finally, the State argued that defendant did not disclose any expert witnesses, and the issue of whether acid reflex would affect the breath test was a subject that required expert testimony.

At the hearing on the motion, defense counsel argued that admissibility and weight were separate questions. Defense counsel agreed the breath test was admissible because the State met the foundation requirements: the machine had been tested at appropriate times before and after defendant's test, the machine was certified, the officer did a blank check before defendant's test, the officer was in the room with defendant for 20 minutes before the test, defendant blew in the machine, and a reading was produced. Defense counsel argued, however, that the weight to give the test was for the jury, and the jury did not have to find the testing credible.

The trial court found that defense counsel was attempting to show that defendant had acid-reflux syndrome, suffered from it in the observation room, and that acid reflux could affect the breath-test results. The court asked defense counsel

how defendant would present competent evidence on that subject.

Defense counsel argued Sergeant Chacon testified about the importance of not having stomach contents enter the mouth. Defense counsel further argued that whether Sergeant Chacon's observation was adequate to determine whether anything came up out of defendant's stomach was an issue of credibility for the jury. The trial court barred defendant from any further reference to acid-reflux disease or the efficacy of the observation period.

Defense counsel then moved for a directed verdict on both counts, arguing the State presented no evidence that defendant knew her license was suspended. Therefore, defense counsel argued, the State failed to prove the requisite mental state. The trial court denied the motion.

The defense rested without presenting evidence. Defense counsel sought clarification on the trial court's earlier ruling barring defendant from any reference to acid-reflux disease or the efficacy of the observation period. Defense counsel inquired whether he could (1) tell the jury that it determines the weight to give the evidence, (2) talk to the jury about the credibility of the evidence, (3) talk to the jury about the officer's testimony regarding the purpose of the observation period, and (4) comment on what was in evidence regarding factors that interfere with testing. The court confirmed that such comments were permissible. The court further confirmed that defense counsel could not comment on whether Sergeant Chacon was

doing an adequate job of making sure that factors that interfere with testing did not occur.

The jury-instruction conference, closing argument, and return of the jury verdict are not contained in the transcript in the record on appeal. The record suggests that defense counsel sought an instruction that the State had to prove defendant had notice that her license was suspended. The trial court apparently rejected that instruction.

The January 19, 2007, docket entry reflects the jury found defendant guilty on both counts.

### C. Postrial and Sentencing Motions

On February 20, 2007, defendant filed a motion for a new trial. Among other things, defendant argued the trial court erred by (1) denying the fifth motion in limine; (2) denying the motion to suppress statements; (3) denying the motion to suppress the HGN test and not allow a Frye hearing; (4) denying the request for a bill of particulars; (5) denying the motion to suppress the breath test; (6) granting the State's motion to strike defendant's motion to suppress for lack of probable cause, denying defendant a hearing on the motion to suppress, and not granting the motion to suppress; (7) failing to instruct the jury that the State had to prove defendant had notice that her license was suspended; (8) allowing the State's motion in limine with respect to closing argument and limiting defendant's closing argument by (a) restricting comment on the quality of the officer's observation of the defendant, and (b) limiting comment on

what the Breathalyzer was measuring if any stomach contents were brought up into defendant's mouth during the 20-minute observation period.

On that same date, defendant also filed motions to vacate her convictions on count I and count II. Defendant asserted that count II must be vacated because both convictions were based on the same conduct. Defendant asserted that count I should be vacated because the jury made no finding that defendant's license was suspended for a violation of section 11-501.1 of the Vehicle Code (statutory summary suspension).

On March 28, 2007, the trial court held a hearing on defendant's posttrial motions and the sentencing. The record on appeal does not contain a transcript of that hearing. The March 28, 2007, docket entry reflects that the court denied the motion to vacate count I but granted the motion to vacate count II. The court sentenced defendant to incarceration in the county jail for 180 days plus 30 months' probation on count I.

On April 3, 2007, defendant filed a motion to modify her sentence. Defendant requested the trial court modify her sentence to provide that the period of imprisonment be served in the Comprehensive Home-Incarceration Program (CHIP).

On April 9, 2007, the trial court held a hearing on defendant's motion to modify sentence. At the hearing, Rolla Dolph, the courtroom deputy assigned to the courtroom when defendant was sentenced, testified. Dolph testified he saw defendant give her counsel some keys and heard her tell counsel

one of the keys belonged to the car in the lot that had to be moved.

Defense counsel questioned the trial court about whether he could continue to act as defendant's counsel because he would have to testify to rebut Dolph's testimony. The court believed counsel could testify without being disqualified so long as he was not testifying against his client's interests. The court agreed to accept counsel's representations or counsel could testify under oath and be subject to cross-examination.

Defense counsel informed the court that he drove defendant to court for sentencing. Defendant asked counsel to give her keys to a man named "Sam," and that Sam would take care of her animals. Defendant said nothing to counsel about moving a car. The trial judge took the matter under advisement and indicated a ruling would be made within 24 hours.

The record does not contain a ruling or docket entry on defendant's motion to modify sentence. However, on April 20, 2007, defendant filed a motion to vacate an April 11, 2007, order denying defendant's motion to modify sentence and also asked the trial judge, Richard Klaus, to recuse himself and refer the case for reassignment. In particular, defendant noted that once Dolph's testimony was rebutted by defense counsel, Judge Klaus had to judge the credibility of someone who worked under his direct supervision. Defendant also argued she was denied effective assistance of counsel when defense counsel could not argue for his own credibility.

- 19 -

On April 30, 2007, defendant filed a motion to reconsider sentence. The motion asserted the sentence was excessive. This motion was arguably untimely because it was filed more than 30 days after sentencing. The record does not contain any indication that the parties or the trial court ever mentioned the late filing.

On May 16, 2007, Judge Thomas Difanis held a hearing on defendant's motion to vacate the order and for recusal. Only a portion of the hearing is contained in the record on appeal. Judge Difanis granted the motion for recusal and assigned another judge to hear the motion to reconsider sentence.

On May 24, 2007, the newly assigned judge, Judge Jeffrey Ford, held a hearing on defendant's motion to reconsider sentence. Defense counsel argued the grounds raised in both the motion to modify sentence and the motion to reconsider sentence. The court denied the motions.

This appeal followed.

## II. ANALYSIS

### A. This Court Has Jurisdiction Over the Appeal

Before addressing the merits, this court must first ensure that it has jurisdiction over the appeal. In its appellee brief, the State notes that while the April 3, 2007, postsentencing motion was timely, the April 30, 2007, motion to reconsider was not. The State further notes it is debatable whether defendant's April 20, 2007, motion to vacate the April 11, 2007, order denying the motion to modify sentence was a

motion directed against the March 28, 2007, judgment. Therefore, according to the State, it is unclear whether the motion to vacate extended defendant's time to file a notice of appeal. However, the State argues that under the revestment doctrine, an argument can be made that the parties revested the trial court with jurisdiction over the April 30, 2007, motion to reconsider.

Pursuant to Supreme Court Rule 606(b), a defendant must file a notice of appeal within 30 days after entry of judgment or, if a postjudgment motion is timely filed, within 30 days of the order disposing of that motion. 210 Ill. 2d R. 606(b). Moreover, "[a] trial court loses jurisdiction to vacate or modify its judgment 30 days after entry of the judgment unless a timely postjudgment motion is filed." People v. Minniti, 373 Ill. App. 3d 55, 65, 867 N.E.2d 1237, 1246 (2007).

In this case, the trial court entered the final judgment on March 28, 2007, when it sentenced defendant. Therefore, any postjudgment motion had to be filed by April 27, 2007. Defendant filed a timely postjudgment motion on April 9, 2007, and an untimely motion on April 30, 2007.

Based on defendant's April 20, 2007, motion, the trial court apparently denied the April 9, 2007, motion to modify sentence on April 11, 2007. However, a reasonable conclusion can be drawn from the record that the April 11, 2007, order denying the April 9, 2007, motion to modify sentence was vacated when Judge Difanis granted defendant's April 20, 2007, motion to recuse Judge Klaus. By vacating the April 11, 2007, order, the

- 21 -

timely April 9, 2007, motion to modify remained pending. In fact, defense counsel, without objection, argued at the May 24, 2007, hearing on the postjudgment motions the issues raised in both the timely and untimely postjudgment motions.

Because the April 9, 2007, motion remained pending, the May 24, 2007, order denying the untimely April 30, 2007, motion to reconsider can be construed as also denying the April 9, 2007, pending motion to modify. Consequently, the notice of appeal filed within 30 days of the May 24, 2007, order was timely, and this court has jurisdiction.

Alternatively, this court finds the parties revested the trial court with jurisdiction to consider the untimely motion to reconsider. Under the revestment doctrine, the parties can revest a court with jurisdiction so long as (1) the court has general jurisdiction over the matter and personal and subject-matter jurisdiction over the particular cause; (2) the parties actively participate without objection; and (3) the proceedings are inconsistent with the merits of the prior judgment. Minniti, 373 Ill. App. 3d at 65, 867 N.E.2d at 1246. If a trial court is revested with jurisdiction, then a notice of appeal filed within 30 days after a ruling on the untimely postjudgment motion vests the appellate court with jurisdiction. Minniti, 373 Ill. App. 3d at 67, 867 N.E.2d at 1248.

Those factors are present here. The trial court had general jurisdiction over the matter, as well as personal and subject-matter jurisdiction over the case. The parties actively

participated in the hearing on the motion to reconsider without objection.  Finally, the motion to reconsider hearing was inconsistent with the prior judgment.  That is, by participating and not objecting to the hearing on the motion to reconsider the sentence, the prosecutor essentially acknowledged that the prior sentencing judgment should be revisited.  See Minniti, 373 Ill. App. 3d at 67, 867 N.E.2d at 1248, citing People v. Gargani, 371 Ill. App. 3d 729, 732, 863 N.E.2d 762, 766 (2007).  Therefore, the parties revested the trial court with jurisdiction, and this court has jurisdiction over the appeal.

### B. State Not Required To Prove Defendant Knew Her License Was Suspended

Defendant argues, citing Morissette v. United States, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952), that a culpable mental state is a necessary element of a felony or any offense with a significant penalty.  As such, defendant argues, the State was required to prove that defendant had knowledge that her license was suspended when she drove on March 1, 2006.  We disagree.

In Morissette, the defendant was charged with a federal crime, theft from government land.  Morissette, 342 U.S. at 248, 96 L. Ed. at 292, 72 S. Ct. at 242.  The statute in question did not provide a requisite mental state.  The United States Supreme Court reversed the defendant's conviction.  The Court found that the federal law merely adopted a crime defined at common law which, at common law, required a mental state.  Morissette, 342 U.S. at 260-61, 96 L. Ed. at 299, 72 S. Ct. at 248-49.  There-

- 23 -

fore, the Court held that the absence of a mental state from the statute would not be construed as eliminating the mental state required. Morissette, 342 U.S. at 261-62, 96 L. Ed. at 299-300, 72 S. Ct. at 249. Nothing in the Morissette decision can be construed as requiring a mental state in all felonies. In fact, the Morissette Court specifically declined to "delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not." Morissette, 342 U.S. at 260, 96 L. Ed. at 299, 72 S. Ct. at 248; see also Staples v. United States, 511 U.S. 600, 618-19, 128 L. Ed. 2d 608, 624, 114 S. Ct. 1793, 1804 (1994) (refusing to adopt a rule that the public-welfare-offense rationale should not be used to interpret any statute defining a felony offense as dispensing of a mens rea requirement unless Congress specifically provides that the offense is a strict-liability offense; but noting that where dispensing with a mens rea would require the defendant to have knowledge only of traditionally lawful conduct and where a penalty is severe, such factors suggest Congress does not intend to eliminate a mens rea requirement).

Whether an offense requires proof of a mental state depends on whether the offense is a misdemeanor or whether the legislature clearly indicated the intent to impose absolute liability for the conduct. 720 ILCS 5/4-9 (West 2006). Specifically, section 4-9 of the Criminal Code of 1961 provides as follows:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in [s]ections 4-4 through 4-7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."  720 ILCS 5/4-9 (West 2006).

"Section 4-9 applies to all criminal penalty provisions, including those outside the Criminal Code of 1961."  People v. Molnar, 222 Ill. 2d 495, 519, 857 N.E.2d 209, 223 (2006).

### 1. Standard of Review

Because the issue defendant raises requires an interpretation of the relevant statutes, this court reviews the issue de novo.  People v. Dunn, 365 Ill. App. 3d 292, 294, 849 N.E.2d 148, 149 (2006).  When construing a statute, the primary consideration is to determine and give effect to the legislature's intent.  People v. Skillom, 361 Ill. App. 3d 901, 906, 838 N.E.2d 117, 122 (2005).  A court must consider the statute in its entirety.  People v. Davis, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002).  "The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition."  Davis, 199 Ill. 2d at 135, 766 N.E.2d at 644.  A statute will not

be interpreted as imposing absolute liability without a clear indication the legislature intended absolute liability or unless an important public policy favors absolute liability. Molnar, 222 Ill. 2d at 519, 857 N.E.2d at 223.

   2. Plain Language Indicates The Legislature Intended No Mental
        State for DUI With a Suspended License

In this case, the State charged defendant with violating section 11-501(a)(1) of the Vehicle Code (625 ILCS 5/11-501(a)(1) (West 2006)), which provides that a person shall not drive while under the influence of alcohol. Generally, such offense is a misdemeanor. See 625 ILCS 5/11-501(b-2) (West 2006). In this case, however, the offense was elevated to a Class 4 felony because defendant's license was suspended at the time. Section 11-501(c-1)(1) of the Vehicle Code provides as follows:

> "A person who violates subsection (a)
> during a period in which his or her driving
> privileges are revoked or suspended, where
> the revocation or suspension was for a viola-
> tion of subsection (a), [s]ection 11-501.1,
> paragraph (b) of Section 11-401, or for reck-
> less homicide as defined in [s]ection 9-3 of
> the Criminal Code of 1961 is guilty of a
> Class 4 felony." 625 ILCS 5/11-501(c-1)(1)
> (West 2006).

The statute does not contain a mental state. This fact alone does not per se indicate that no mental state is required.

- 26 -

Molnar, 222 Ill. 2d at 519, 857 N.E.2d at 223 (finding that section 10 of the Sex Offender Registration Act creates a absolute liability offense). However, given the statute's plain language, the purpose behind the legislation, and the existing case law, this court concludes that section 11-501(c-1)(1) does not require proof of a mental state.

The purpose of the DUI statute is to protect people who walk and drive on the public way. People v. Avery, 277 Ill. App. 3d 824, 830, 661 N.E.2d 361, 365 (1995). In People v. Ziltz, 98 Ill. 2d 38, 42, 455 N.E.2d 70, 72 (1983), the Illinois Supreme Court held that section 11-501(a)(1) of the Vehicle Code clearly imposed strict liability and did not require a mental state. The court found that "[t]he State has a rational basis for curbing the incidence of drunk driving." Ziltz, 98 Ill. 2d at 43, 455 N.E.2d at 72.

The question here is whether the aggravating factor that elevated the offense from a misdemeanor to a Class 4 felony is evidence of the legislature's intent to require a mental state. In a similar case, Avery, 277 Ill. App. 3d 824, 661 N.E.2d 361, the court concluded that a similar enhancement did not indicate such an intent.

In Avery, the defendant was charged with DUI. The offense was elevated from a misdemeanor offense to a felony because the defendant was involved in a motor vehicle accident that resulted in great bodily harm. Avery, 277 Ill. App. 3d at 828, 661 N.E.2d at 364. In determining whether the trial court

properly refused to entertain an insanity defense, the Avery court concluded that the addition of the aggravating factors--involvement in a motor-vehicle accident--did not signal an intent by the legislature to add a mental state to the offense.  Avery, 277 Ill. App. 3d at 830, 661 N.E.2d at 365. The court concluded that the essential crime remained the same,  and the evil the statute intended to remedy remained the same.  Avery, 277 Ill. App. 3d at 830, 661 N.E.2d at 365.

Similarly, the factor in this case that caused the offense to elevate from a misdemeanor into a Class 4 felony--DWS--does not change the essential crime.  Moreover, the evil the statute intended to remedy remained the same.

In addition, a conviction for DWS does not require proof of the defendant's receipt of notice or knowledge of the suspension.  See People v. Johnson, 170 Ill. App. 3d 828, 832, 525 N.E.2d 546, 550 (1988).  Because  no mental state is required for DWS or DUI, it follows that no mental state is required for DUI with the aggravating factor that the driver's driving privileges were suspended.  The State was not required to prove that defendant knew her license was suspended.

### C. Failure To Instruct Jury To Find that Defendant's License Was Suspended Due to Her Prior Violation of Section 11-501.1 Was Harmless Error

Defendant next argues that the jury was not instructed to find that defendant's license was suspended due to a statutory summary suspension.  The State concedes that under Apprendi v. New Jersey, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct.

2348, 2362-63 (2000), any fact other than a prior conviction "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  The State further concedes that a statutory summary suspension is not a conviction and that the grounds for defendant's suspension increased the penalty beyond the pre-scribed statutory maximum.  See People v. Dvorak, 276 Ill. App. 3d 544, 552, 658 N.E.2d 869, 876-77 (1995) (a statutory summary suspension proceeding is civil in nature and its purpose is not to convict the defendant of an offense).  Therefore, the State agrees with defendant that the issue should have been submitted to the jury.

The State argues, however, that a jury instruction that omits an element of the offense is an error subject to the harmless-error analysis.  The State further argues that the error here was harmless because the evidence concerning the grounds for defendant's license suspension was uncontested and overwhelming. We agree.

A jury instruction that omits an element of an offense is an error subject to harmless-error review.  Neder v. United States, 527 U.S. 1, 15, 144 L. Ed. 2d 35, 51, 119 S. Ct. 1827, 1837 (1999); People v. Thurow, 203 Ill. 2d 352, 368, 786 N.E.2d 1019, 1028 (2003) (finding that the failure to instruct the jury as to the element of the crime that the victim was a member of defendant's household was harmless error).  Omitting an element of the offense from a jury instruction is harmless if the review-

ing court determines, beyond a reasonable doubt, that the error did not contribute to the verdict. Neder, 527 U.S. at 15, 144 L. Ed. 2d at 51, 199 S. Ct. at 1837. This can be shown where the omitted element was uncontested and supported by overwhelming evidence. Thurow, 203 Ill. 2d at 369, 786 N.E.2d at 1028.

Here, overwhelming evidence supports the conclusion that defendant's license was suspended due to a statutory summary suspension. The record contains an undated stipulation signed by counsel for defendant and the State. However, the record is incomplete regarding the use of this stipulation. The appellant has the burden to present a sufficient record and doubts are resolved against the appellant. See People v. Kamide, 254 Ill. App. 3d 67, 74, 626 N.E.2d 337, 342 (1993) (holding that without a sufficient record to reflect the evidence on the missing element of the charge, the court was unable to determine whether overwhelming evidence existed and therefore resolved those doubts against the defendant). Defendant did not provide this court with an adequate record. Therefore, this court resolves any doubts against defendant and concludes that the stipulation was used at trial.

The stipulation provided that defendant "received a traffic citation for DUI in DuPage County on January 8, 2006." The stipulation also provided that defendant's "statutory summary suspension based upon the DUI in DuPage County began on February 23, 2006." This, along with the other evidence admitted at trial, demonstrates that on March 1, 2006 (five days after the

suspension began), defendant was DWS pursuant to a statutory summary suspension. Notably, the trial court admitted into evidence, without objection, defendant's driver's license abstract from the Secretary of State. Sergeant Chacon testified he checked the status of defendant's driver's license and learned it was suspended. This evidence demonstrates beyond a reasonable doubt that defendant's license was suspended due to a statutory summary suspension. As such, the failure to instruct the jury on the this element was harmless error.

Alternatively, this court also finds the record supports the conclusion that defendant affirmatively chose not to submit this issue to the jury. The stipulation supports that conclusion. In addition, the statement of the nature of the case, to which defendant did not object, provided that in count I, defendant was charged with committing DUI, and in count II, defendant was charged with DWS. The statement of the case says nothing about a requirement that the jury find, on count I, that defendant's license was suspended due to a prior statutory summary suspension.

Moreover, it appears defendant did not tender an instruction on count II requesting that the jury find that her license had been suspended for a prior statutory summary suspension. The only instruction defendant submitted on the issue was one requesting that the jury find that defendant had notice of her suspension. The trial court denied that request. Based on the record, defense counsel appears to have made a tactical

decision to stipulate to her prior suspension.  She cannot now be heard to complain.

As a final note on this issue, this court notes that--insofar as the record on appeal shows--the jury instructions in this case were not marked as "given" or "refused."  Section 2-1107 of the Code of Civil Procedure requires the court mark all instructions "refused" or "given" and maintain all originals and copies of the instructions, whether given, modified or refused, in the record of the proceedings.  735 ILCS 5/2-1107(a),(b) (West 2006).  Doing so in this case would have been extremely helpful to this court's review.

### D. Trial Court Did Not Err by Denying Defendant a Hearing on Her Motion To Suppress Evidence for Lack of Probable Cause To Arrest

Defendant argues the trial court erred by granting the State's motion to strike and denying her a hearing on her motion to suppress evidence for lack of probable cause for the arrest.  Specifically, defendant argues that absent a <u>Frye</u> hearing to establish the scientific validity of the HGN test, the HGN test could not be used by the officers to determine probable cause.  Defendant asserts that an arrest made, at least in part, on probable cause derived from an HGN test is invalid.  As such, defendant asserts that the arrest must be "quashed" and the evidence flowing from that arrest, including the breath test, must be suppressed.

The trial court has the authority to control its own docket and require compliance with its procedural rules.  <u>People</u>

v. <u>Garcia</u>, 312 Ill. App. 3d 422, 423, 727 N.E.2d 683, 685 (2000).
This court will not reverse the court's order granting the motion
to strike absent an abuse of that discretion.  See, <u>e.g.</u>,
<u>Garcia</u>, 312 Ill. App. 3d 423, 727 N.E.2d at 685.

The Illinois Supreme Court has recently held that
before the results of an HGN test can be admitted into evidence
at trial, HGN testing must meet the <u>Frye</u> standard.  <u>People v.
McKown</u>, 226 Ill. 2d 245, 258, 875 N.E.2d 1029, 1037 (2007)
(remanding the cause to the trial court for a <u>Frye</u> hearing to
determine whether the HGN test as been generally accepted as a
reliable indicator of alcohol impairment).  However, this court
need not decide whether probable cause can be based on an HGN
test absent a <u>Frye</u> hearing because the record demonstrates
sufficient evidence separate and apart from the HGN test sup-
ported probable cause.  See, <u>e.g.</u>, <u>Kirk</u>, 289 Ill. App. 3d at 334,
681 N.E.2d at 1078-79 (finding admission of HGN test at trial
without a <u>Frye</u> hearing was harmless in light of the other evi-
dence of the defendant's guilt).

In this case, the trial court did not abuse its discre-
tion by granting the State's motion to strike because the record
demonstrates sufficient probable cause supported defendant's
arrest.  Probable cause to arrest exists when the totality of
facts and circumstances within the officer's knowledge would lead
a person of reasonable caution to believe that an offense has
been committed and that the person apprehended has committed the
offense.  <u>People v. Gray</u>, 305 Ill. App. 3d 835, 838, 713 N.E.2d

- 33 -

781, 783 (1999).  In assessing the existence of probable cause, an objective inquiry into the police officer's conduct is used. People v. Smith, 156 Ill. App. 3d 596, 600, 509 N.E.2d 1345, 1348 (1987).

Here, Sergeant Chacon testified he observed defendant's car turn and strike a raised median with all four tires.  Defendant was wearing several colored beads, beads Sergeant Chacon knew the bars gave out around Mardi Gras.  Sergeant Chacon described defendant's eyes as being watery and red and her speech as slightly slurred.  Defendant admitted having had three drinks.  An odor of alcohol emanated from the open window of defendant's car.  Sergeant Chacon had defendant perform preexit and field-sobriety tests from which he concluded defendant was impaired by alcohol.  As such, sufficient evidence of probable cause was shown.  See, e.g., People v. Brodeur, 189 Ill. App. 3d 936, 941, 545 N.E.2d 1053, 1056 (1989) (finding probable cause where the offer testified the driver had bloodshot eyes, slurred speech, a strong odor of alcohol on the breath, and had been in a motor-vehicle accident); People v. Cortez, 361 Ill. App. 3d 456, 464, 837 N.E.2d 449, 457 (2005) (odor of alcohol on the defendant's breath, the defendant's slurred speech, swaying, bloodshot eyes, and admission to drinking supported finding of probable cause for arrest for DUI).

### E. Trial Court Did Not Abuse Its Discretion by Limiting Defendant's Cross-Examination and Argument on the Reliability of the Breath Test

Defendant next argues the trial court erred by limiting

her cross-examination and closing argument regarding the reliability of the breath test as it was administered in this case.

### 1. Standard of Review

This court reviews a trial court's evidentiary rulings for an abuse of discretion. People v. Britt, 265 Ill. App. 3d 129, 146, 638 N.E.2d 282, 294 (1994) (the trial court has the discretion to limit the scope of cross-examination and such ruling will not be reversed absent an abuse of discretion); People v. Millighan, 265 Ill. App. 3d 967, 974, 638 N.E.2d 1150, 1156 (1994) (the trial court has the discretion to limit the character and scope of closing argument).

### 2. Trial Court Did Not Abuse Its Discretion

Defendant first argues the trial court improperly limited her cross-examination of Sergeant Chacon. Defendant sought to cross-examine Sergeant Chacon on whether anything short of vomiting where the contents of the stomach are brought up into the mouth would affect the breath test and whether such event occurred during the observation period.

A court may limit cross-examination of a witness to prevent minimally relevant questioning or confusion of the issues. Britt, 265 Ill. App. 3d at 146, 638 N.E.2d at 294. Defendant must demonstrate not only that the trial court abused its discretion but must also show the abuse of discretion resulted in "manifest prejudice." Britt, 265 Ill. App. 3d at 146, 638 N.E.2d at 294; see also People v. Jackson, 303 Ill. App. 3d 583, 587, 715 N.E.2d 252, 255 (1999) (finding that even if a

- 35 -

trial court abuses its discretion, a new trial is not warranted if the error is harmless beyond a reasonable doubt).

Here, the trial court did not abuse its discretion by limiting defense counsel's cross-examination because the issue defense counsel intended to raise had no basis in the evidence. Officer Chacon did not testify that regurgitation would affect the test, and defense counsel had identified no expert he intended to call to testify in that regard.

Moreover, the applicable regulations no longer prohibit regurgitation during the 20-minute observation period. Pursuant to section 11-501.2 of the Vehicle Code, breath-alcohol test results are admissible if the test is performed according to the standards promulgated by the Department of State Police. See 625 ILCS 5/11-501.2 (West 2006). Prior to the 2004 amendments, the applicable regulations provided that the subject shall not have "regurgitated or vomited" during the 20-minute observation period and if the subject "regurgitates or vomits," the process will start again. See 20 Ill. Adm. Code §1286.310(a), adopted at 25 Ill. Reg. 3023, 3042-43 (eff. February 1, 2001); People v. Bonutti, 212 Ill. 2d 182, 817 N.E.2d 489 (2004) (holding that the test was valid if the subject did not regurgitate during the 20-minute observation period regardless of whether the officer saw the subject regurgitate). However, the regulations now provide that for a breath test result to be admissible, the subject must not have vomited during a 20-minute period. 20 Ill. Adm. Code §1286.310(a), as amended by 28 Ill. Reg. 10017, 10038 (eff. June

30, 2004).  Section 1286.310(a) of Title 20 of the Illinois Administrative Code provides the following standards:

"The following procedures shall be used to obtain a breath sample to determine a subject's BrAC with an approved evidentiary instrument:

a) Prior to obtaining a breath analysis reading from a subject, the BAO or another agency employee shall continuously observe the subject for at least 20 minutes.

1) During the 20[-]minute observation period the subject shall be deprived of alcohol and foreign substances and shall not have vomited.

2) If the subject vomits during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water.

3) If the individual continues to vomit, alternate testing shall be considered." 20 Ill. Adm. Code §1286.310(a), as amended by 29 Ill. Reg. 10017, 10038 (eff. June 30,

2004).

Defendant, by attempting to ask about actions other than vomiting, attempted to introduce an issue into the case without any evidence in support thereof.  Therefore, the trial court's ruling limiting defendant's cross-examination on that subject was not an abuse of discretion.

Defendant also argues the trial court erred by limiting her closing argument and not allowing her to comment on the efficacy of Sergeant Chacon's observation of defendant.  Even if the trial court abused its discretion by not allowing counsel to comment on the efficacy of Sergeant's Chacon's observation in closing argument, the lack of a record precludes this court from concluding that defendant suffered prejudice.  Without the transcript of closing argument, this court cannot determine whether the court's limitation affected defendant's closing argument.  Because it was defendant's burden to provide this court with an adequate record, any deficiency in the record is construed against her.  See, e.g., People v. Fernandez, 344 Ill. App. 3d 152, 160, 799 N.E.2d 944, 951 (2003) (any doubts arising from an incomplete record on appeal are resolved against the appellant, who had the responsibility to present a complete record on appeal).  This court, therefore, finds any error by the court in limiting defendant's closing argument was harmless.

### F. Trial Court Did Not Err by Denying Motion To Suppress Statements

Defendant argues the trial court erred by denying her motion to suppress statements.  Defendant argues "the officer did

not determine the [d]efendant understood the warnings and did not obtain a waiver." Defendant also argues her will was overborne "by the thorough chilling over an extended period of time."

## 1. Standard of Review

Whether a trial court properly decided a motion to suppress presents questions of both law and fact. In re Christopher K., 217 Ill. 2d 348, 373, 841 N.E.2d 945, 960 (2005). This court will reverse a trial court's credibility determinations and findings of fact only if they are against the manifest weight of the evidence. In re Christopher K., 217 Ill. 2d at 373, 841 N.E.2d at 960. This court reviews de novo the ultimate legal question of whether the statements should be suppressed. In re Christopher K., 217 Ill. 2d at 373, 841 N.E.2d 960.

## 2. Denial of Motion To Suppress Issue Moot or, Alternatively, Not Error

This court's review is severely hampered by defendant's brief and the record on appeal. Defendant did not identify in the trial court or on appeal the specific statements she sought to suppress. The record is unclear whether the court admitted any of the statements obtained during custodial interrogation into evidence at trial. While this court has a portion of the trial transcript, the record does not contain either a transcript or the actual videotape or DVD admitted into evidence and published to the jury. If the trial court did not admit any of the statements allegedly received in violation of Miranda, the issue is moot because those statements could not have formed the basis for the jury's verdict. Cf., e.g., People v. Savory, 105 Ill.

- 39 -

App. 3d 1023, 1027, 435 N.E.2d 226, 230 (1982) (noting that the defendant was not collaterally estopped from seeking review of the denial of a motion to suppress in his second trial, despite not seeking review of the same motion in his first trial, because the prosecution did not rely on the statements in the first trial and the issue would have been considered moot on review in the first appeal).

Even assuming the issue is not moot, this court finds no error. Defendant argues she did not understand the waiver. Her brief does not indicate why she did not understand the waiver. Evidence of intoxication alone is not sufficient to render a statement unknowing. See People v. Silas, 278 Ill. App. 3d 400, 405, 663 N.E.2d 443, 447-48 (1996) (statements should be suppressed only where a defendant is so grossly intoxicated that she lacked the capacity to knowingly waive her rights). Defendant does not argue she was so grossly intoxicated that she lacked the capacity to waive her rights. Moreover, Sergeant Chacon testified that defendant appeared to understand what he told her.

Defendant also asserts that Sergeant Chacon failed to obtain from defendant a waiver of defendant's Miranda rights. Concededly, Sergeant's Chacon's testimony about defendant waiving her Miranda rights was not clear. He initially testified he gave defendant the opportunity to waive her Miranda rights by asking her if she was willing to discuss the matter further. After watching a portion of the videotape, Sergeant Chacon admitted he

never said, "Are you willing to waive those rights and talk to me."

While any clear manifestation of a desire to waive is sufficient, the statements are inadmissible if nothing in the record shows a clear intent by the defendant to waive Miranda rights. People v. Landgham, 122 Ill. App. 2d 9, 18, 257 N.E.2d 484, 488 (1970). Here, because defendant failed to provide this court with the videotape of the interrogation, this court cannot determine whether defendant manifested a clear desire to waive her rights. Because defendant bore the burden of providing the court with an adequate record, this court resolves the issue against defendant. People v. House, 202 Ill. App. 3d 893, 908, 560 N.E.2d 1224, 1234 (1990); Fernandez, 344 Ill. App. 3d at 160, 799 N.E.2d at 951 (any doubts arising from an incomplete record on appeal are resolved against the appellant). Given defendant's failure to provide an adequate record, this court has no basis on which to reverse the trial court's ruling on the motion to suppress.

Finally, defendant argues her will was overborne because she was cold. Whether a defendant's will is overborne depends upon the totality of the circumstances, the characteristics of the defendant, and the details of the interrogation. People v. Berry, 123 Ill. App. 3d 1042, 1044, 463 N.E.2d 1044, 1047 (1984). Again, given the absence of the videotape or transcript thereof on appeal, this court cannot review this issue. Moreover, nothing in the record before this court sup-

ports the assertion that the temperature of the room  created a coercive environment that rendered any statements involuntary. See, e.g., Hart v. State, 852 So. 2d 839, 847 (Ala. Crim. App. 2002) (finding that even though the defendant complained about the temperature and requested additional clothing, nothing in the record indicated that the cold temperature influenced his decision to speak or caused his will to be overborne).

G. Trial Court Did Not Err by Denying Bill of Particulars

Defendant next argues the trial court abused its discretion by denying her motion for a bill of particulars. Defendant claims her motion was timely because it was filed within four days of the State charging her with count II. Defendant asserts, without citation to authority, that discovery is not a substitute to a motion for a bill of particulars.

Section 114-2(a) of the Code of Criminal Procedure of 1963 provides that a motion for a bill of particulars must be filed within a reasonable time after arraignment.  725 ILCS 5/114-2(a) (West 2006).  "The purpose of a bill of particulars is to give the defendant notice of the charge and to inform the defendant of the particular transactions in question, thus enabling preparation of a defense." People v. Woodrum, 223 Ill. 2d 286, 301-02, 860 N.E.2d 259, 270 (2006).  If the indictment sufficiently informs the defendant of the charged offense, no need for a bill of particulars exists. Woodrum, 223 Ill. 2d at 302, 860 N.E.2d at 270.  Moreover, this court can also consider any discovery the State furnishes when determining the necessity

of a bill of particulars.  See, e.g., People v. Smith, 259 Ill.
App. 3d 492, 497, 631 N.E.2d 738, 742 (1994) (noting that a
defendant who claims that a charging instrument, combined with
any discovery the State furnished, is insufficient to prepare a
defense, she should seek a bill of particulars).  A trial court's
ruling on a motion for a bill of particulars will not be reversed
absent an abuse of discretion.  Woodrum, 223 Ill. 2d at 302, 860
N.E.2d at 270.

In this case, the trial court arraigned defendant on
June 1, 2006, on count I, and on January 5, 2007, on count II.
Therefore, the motion for a bill of particulars was timely only
as to count II.  However, because the trial court vacated count
II after trial, defendant was not prejudiced by the denial of the
motion for a bill of particulars on count II.

In any event, the trial court did not abuse its discre-
tion by denying the request for a bill of particulars because the
information and the State's discovery sufficiently informed
defendant of the charged offenses.  Defendant's bill of particu-
lars sought the date, time, and location of the alleged offenses,
the name of any persons present who witnessed the alleged of-
fenses, and the length of time the alleged conduct continued.
The informations gave the date of both offenses, the location
(Urbana), and the nature of the offenses.  The discovery fur-
nished by the State in June 2006 gave defendant the date and time
of the alleged offenses, the arresting officer's name, defend-
ant's driving abstract from the Secretary of State, and police

reports that, among other things, identified defendant's front-seat passenger. Consequently, the court did not abuse its discretion by denying the motion for a bill of particulars.

### H. Defendant Has Forfeited Issue That Her Sentence Is Excessive

Defendant last argues her sentence was excessive. However, the record on appeal does not contain a transcript of the March 28, 2007, sentencing hearing. Without a transcript, this court cannot determine whether the trial court abused its discretion because, for example, this court does not know what factors influenced the court's decision, whether the court considered mitigating factors, and whether the court considered certain aggravating factors.

Moreover, defendant fails to cite any authority in support of her arguments, not even the standard of review. Points not argued with citation to authority are forfeited. See 210 Ill. 2d Rs. 341(h)(7), 612(i).

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State's request that defendant be assessed $75 as costs for this appeal.

Affirmed.

McCULLOUGH and TURNER, JJ., concur.